**UNITED STATES of America, Plaintiff,**

v.

**David HALL and W. W. Taylor, Defendants.**

**Crim. No. 75–8.**

United States District Court, W. D. Oklahoma.

Feb. 10, 1975.

On Motions for Continuance, Transfer and to Suppress Feb. 10, 1975.

On Motion to Dismiss First Defendant Feb. 11, 1975.

On Motions to Dismiss Second Defendant Feb. 11, 1975.

On Motions for Production and Examination of Grand Jury Minutes and Evidence Feb. 12, 1975.

On Motion for Discovery Regarding Named Witness Feb. 13, 1975.

On Motion to Exclude Certain Testimony Feb. 13, 1975.

On Motion for Production of Material Establishing Bias and Affecting Witnesses' Credibility Feb. 13, 1975.

On Motion to Examine Jurors Feb. 22, 1975.

On Motions to Disqualify April 24, 1975.

On Motion to Interview Jurors, for Acquittal and New Trial April 24, 1975.

William R. Burkett, U. S. Atty., James M. Peters, O. B. Johnston, III, Asst. U. S. Attys., Oklahoma City, Okl., for plaintiff.

D. C. Thomas, Richard F. McDivitt, Jack S. Dawson, Oklahoma City, Okl., David T. Austern, Washington, D. C., for Hall.

James P. Linn, John M. Johnston, Oklahoma City, Okl., Emmett Colvin, Dallas, Tex., for Taylor.

DAUGHERTY, Chief Judge.

Defendants Hall and Taylor have filed Motions for Discovery and Inspection. Defendant Hall in his Motion also moves for the Production of Evidence Favorable to the Accused. Both Motions are supported by Briefs. The Plaintiff has filed its Response to said Motions.

Defendant Hall seeks to discover the following matters: (1) Written or recorded statements, confessions, or admissions made by himself, any co-defendant, or any unindicted co-conspirator; (2) Physical objects obtained in investigating the case which may be used as evidence or which could be used by Defendant for exculpatory purposes to include electronically recorded statements; (3) The identity of all persons who have knowledge of the case or who have been interviewed by Government agents, whether or not the Government plans to call such persons as witnesses in the case. In this regard, he seeks (a) written statements of persons the Government does not intend to call at trial, (b) Grand Jury testimony, (c) exculpatory material, and (d) Federal and State criminal records; (4) Scientific reports or results relating to fingerprints, handwriting, or electronic tests; (5) Tangible objects to be used at trial or obtained from Defendant; (6) Information from the United States Attorney as to: (a) whether information has been received from an informant, (b) if relevant information was presented to the Grand Jury which was not recorded, and (c) if it knows of information which would mitigate the punishment of Defendant if convicted; (7) That any Order pursuant to this Motion be on a continuing basis pursuant to Rule 16(g), Federal Rules of Criminal Procedure; and (8) That his requests be considered separately.

Defendant Taylor seeks to discover the following items: (1) Any notes or writings by any Defendant which is to be used as evidence; (2) Evidence to be introduced in nature of money, currency or checks relating to bribery, extortion, or conspiracy; (3) Tangible objects to be introduced at the trial; (4) Any statements or confessions made by any co-defendant which would incriminate or in the alternative exculpate Defendant Taylor; (5) Statements of other witnesses whether incriminating or exculpatory as to Defendant Taylor; and (6) any other exculpatory matters.

In its Response, the Government advises the Court that it has furnished to Defendants copies of transcripts of tape-recorded conversations involving all Defendants and copies of the actual tapes themselves. It further states that no other conversations of Defendants or other persons were recorded or overheard. It appears that a few poor quality tapes are at the Federal Bureau of Investigation Laboratory and will be furnished upon return.

The Government in its Response further denies it has the following requested items: (1) Written or recorded statements or confessions by either moving Defendant; (2) Exculpatory evidence except as noted in depth hereafter; (3) Any arrest and conviction or related records as to its witnesses; and (4) Any scientific reports or statements by experts.

The Government asserts certain requests by Defendant Hall are not supported by

authority showing his entitlement to same and thus it declines to submit such information. Included in this response are: (a) Whether information was provided by an informant; (b) Whether certain Grand Jury testimony was not transcribed; (c) and Evidence which would tend to mitigate punishment in the event of a conviction.

The issues being framed by the parties, the Court makes the following rulings on the Motions for Discovery and Inspection:

## STATEMENTS BY DEFENDANTS

■ The Government has responded that it has no written or recorded statements or confessions from Defendants Hall and Taylor and on this basis such request is denied. The request by both of these Defendants is broad enough to include any statements made by Co-defendant Mooney, who has previously entered a Plea of Guilty to the Conspiracy Count of the Indictment in the instant case. Rule 16(a), *supra,* allowing a defendant to obtain copies of statements or confessions appears to specifically relate to the moving Defendant's own statements. The moving parties have failed to support their request as to statements or confessions by Mooney with legal authority. The Courts have held that statements of co-defendants are not discoverable under Rule 16(b), *supra. United States v. Randolph,* 456 F.2d 132 (Third Cir. 1972), cert. den., 408 U.S. 926, 92 S.Ct. 2507, 33 L.Ed.2d 337; *United States v. Mahany,* 305 F.Supp. 1205 (N.D.Ill.1969); *United States v. Fassler,* 46 F.R.D. 43 (S.D.N.Y.1968); *United States v. Westmoreland,* 41 F.R.D. 419 (S.D.Ind. 1967). The request is denied as to any statements of Co-defendant Mooney.

## EXCULPATORY EVIDENCE

The Government advises it has no evidence which could be considered exculpatory with the possible exception of statements contained in a particular tape-recorded telephone conversation which it advises it has furnished Defendants.

■ In its Response, the Government tendered to the Court for in camera examination all reports of the investigative agency involved in this case. The Court declines to examine these reports. The situation is analogous to the matter considered in *Dennis v. United States,* 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966) which involved grand jury testimony. The Court stated:

> "Trial judges ought not to be burdened with the task or the responsibility of examining sometimes voluminous grand jury testimony in order to ascertain inconsistencies with trial testimony."

Likewise, a trial judge ought not to be burdened with the task of examining investigative reports of Government agencies to determine if exculpatory material is contained therein. This responsibility is that of the prosecution. On the foregoing basis the Motions requesting exculpatory evidence are denied.

## IDENTITY OF WITNESSES

■ The Motions being considered herein request many items which are dependent on the Government disclosing the identity of its witnesses or prospective witnesses. In *United States v. Gleeson,* 411 F.2d 1091 (Tenth Cir. 1969) the Court stated:

> "It is well settled in this circuit that in non-capital cases an accused is not entitled to be furnished a list of the names of government witnesses."

Among the numerous cases following this point are *Nipp v. United States,* 422 F.2d 509 (Tenth Cir. 1970) and *United States v. Baca,* 494 F.2d 424 (Tenth Cir. 1974). Those requests contained in Defendants' Motions to include identity of witnesses, statements of same, and arrest and criminal records of witnesses are thus denied except it is noted that the Government has advised in its Response that it knows of no arrest or criminal records of its witnesses.

## TANGIBLE EVIDENCE

The Government in its Response agrees to allow Defendants to inspect or obtain copies of all tangible evidence it plans to offer as evidence. This will be accomplished as set out hereafter.

### GRAND JURY TESTIMONY

Defendant Hall has filed a separate Motion relating to Grand Jury testimony and therefore issues relating to such will not be considered in the instant Order.

### INVESTIGATIVE INFORMATION

■ Some of the material or items requested, in particular the request seeking identity of persons interviewed by Government agents in investigating this case and statements of such persons who will not be called as witnesses in this case, constitutes a request for discovery of internal Government documents made ·by Government agents. Such material is specifically excluded from pretrial discovery in Rule 16(b), *supra,* which provides:

> "Except as provided in subdivision (a)(2), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by government agents in connection with the investigation or prosecution of the case, or of statements made by government witnesses or prospective government witnesses (other than the defendant) to agents of the government except as provided in 18 U.S.C. § 3500."

The Government correctly objects to such requests on the basis the Rule specifically excepts from discovery items contained in internal government investigative reports. The requests relating to these items to include whether informants were used are denied. *United States v. Stephens,* 315 F.Supp. 1008 (W.D.Okl.1970). *United States v. Marth,* 42 F.R.D. 432 (S.D.N.Y. 1967).

■ Defendant Hall's request that its Motion be deemed continuing is not acted upon by the Court as the request is for a procedure which operates automatically pursuant to Rule 16(g), *supra.*

Accordingly, the 14th day of February, 1975, at 10:00 a.m. at the offices of the United States Attorney, United States Court House, Oklahoma City, Oklahoma, are designated as the time and place for the Government to furnish the Defendants the items it is to furnish them pursuant to this Order.

It is so ordered this 10th day of February, 1975.

### ON MOTIONS FOR CONTINUANCE, TRANSFER AND TO SUPPRESS

Upon consideration of the Motions of Defendants Hall and Taylor for Continuance, Transfer and To Suppress and after a consideration of the Briefs in support of and in opposition to the Motions and after conducting an evidentiary hearing on all of said Motions, the Court finds that all of said Motions should be overruled.

### THE MOTIONS FOR CONTINUANCE OR TRANSFER

■ These Motions are based on alleged prejudicial pretrial publicity. The Defendants placed in evidence certain local newspaper clippings and presented the testimony of two newspaper publishers from small towns near Oklahoma City, Oklahoma who expressed their opinion that Defendant Hall could not get a fair trial here at this time because of local prejudicial newspaper publicity. The Court declined to hear the testimony of certain local newspaper reporters proffered as witnesses by Defendants for the purpose of inquiring into the source of the material which went into their newspaper stories regarding the Defendants. This declination was based on such inquiry not being material or relevant to the Motions under consideration. It is the view of the Court that it is the local newspaper publicity as placed in evidence per se and its effect on potential jurors that is material and relevant—not the source of the news stories.

Our Circuit has spoken to this type motion in several authoritative decisions. In *Welch v. United States,* 371 F.2d 287 (Tenth Cir. 1966), cert. den., 385 U.S. 957, 87 S.Ct. 395, 17 L.Ed.2d 303; and in *United States v. Cooper,* 464 F.2d 648 (Tenth Cir. 1972), continuances on the basis of alleged prejudicial pretrial publicity were denied and the rulings affirmed. In *United States v. Jobe,*

487 F.2d 268 (Tenth Cir. 1973) a transfer or venue change on the basis of alleged prejudicial pretrial publicity was denied and the ruling affirmed. There is also an excellent discussion on the problem in *United States v. Hoffa,* 156 F.Supp. 495 (S.D.N.Y.1957) and in *Estes v. United States,* 335 F.2d 609 (Fifth Cir. 1964), cert. den., 379 U.S. 964, 85 S.Ct. 656, 13 L.Ed.2d 559, reh. den., 380 U.S. 926, 85 S.Ct. 884, 13 L.Ed.2d 814.

 *Welch, supra,* which involved an Oklahoma Supreme Court Justice, teaches that jury prejudice will not be presumed from widespread news coverage preceding and during the trial of a high placed person; that the exercise of free reporting is a right which must be balanced against the right of an accused to be tried by an impartial jury but does not dictate the conclusion that prominence brings prejudice. These cases all stand for the proposition that the procedural safeguards of the voir dire examination of jurors and authorized challenges of jurors provide the ultimate test of whether it is possible to select a fair and impartial jury from the panel selected from the vicinity where the publicity occurred. If utilization of this procedure demonstrates that it is not possible then a continuance or transfer or both on request are available for consideration. The cases also recite that the matter of a continuance or transfer rests in the sound discretion of the Court.

 The Court cannot say from the evidence before it that it is impossible to select a fair and impartial jury at this time in this Court to try these Defendants. It is recognized that one of the Defendants is a former Governor of this State, leaving that office as recent as January 13, 1975. But, his prominence was and is statewide and more and so was and is his publicity. Considering the high office from which he has only recently departed, it is not believed that his prominence will significantly subside in the near future.

Rule 21, Federal Rules of Criminal Procedure provides that the Court upon motion shall transfer a proceeding to another district if the Court is satisfied that there exists in the district where the prosecution is pending so great a prejudice against a defendant that he cannot obtain a fair and impartial trial at any place picked by law for holding court in that district. From the evidence before the Court, the Court is not satisfied at this time and at this stage of the proceeding that any prejudice would exist in a jury panel which would be called in this District against a Defendant which would warrant affirmative action under this Rule.

Accordingly, the Motions of the Defendants herein for a Continuance or Transfer because of pretrial publicity should be denied subject to reconsideration on request after the voir dire examination of prospective trial jurors in this Court. As Defendant Hall's Motion also includes a request that because of alleged prejudicial pretrial publicity the charges against him be dismissed, the Court should likewise deny this Motion to Dismiss on this ground.[1]

### THE MOTIONS TO SUPPRESS

These Motions request the Court to suppress all evidence obtained by the Government by the means of electronic surveillance of the Defendants to include telephone recorders, body recorders and transmitters. The Movants allege that this evidence was illegally obtained, thus should be suppressed as evidence herein by the Court.

The Plaintiff acknowledges that it has evidence to be introduced herein obtained by means of electronic surveillance of the Defendants and states that it has delivered to the Defendants all transcripts of such evidence as well as copies of all tapes except some few tapes of poor quality which are now at the Federal Bureau of Investigation Laboratory for the purpose of an

---

1. No authority is cited to support the propriety of this Motion to Dismiss. Nor has the Court found any authority that a defendant is excused from the alleged commission of a crime and may not be prosecuted for the same and any charges dismissed because of alleged prejudicial pretrial publicity.

attempt to improve the quality so that they are readable and which few tapes will be delivered to Defendants upon return whether the quality has been improved or not.

*Nardone v. United States,* 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939) holds that testimony obtained from intercepted telephone messages in violation of Section 605 of the Federal Communications Act, 47 U.S.C. § 605,[2] is inadmissible and should be suppressed as evidence on motion.

The case of *Rathbun v. United States,* 355 U.S. 107, 78 S.Ct. 161, 2 L.Ed.2d 134 (1957) holds that there is no violation of 42 U.S.C. § 605 if a telephone interception is done with the consent of one party to the telephone conversation.

Congress in 18 U.S.C. § 2511 appears to codify the ruling of *Rathbun* by providing in legislation that:

"(2) * * * (c) It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire or oral communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception.

(d) It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire or oral communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State or for the purpose of committing any other injurious act."

*Lopez v. United States,* 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963) holds that the recording of a defendant's conversation in his office with a federal agent which is recorded by a recording device concealed on the body of the federal agent is not illegally obtained and is admissible in evidence and *United States v. White,* 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971) holds that the use of a radio transmitter carried on the person of an informant which transmits to Government agents the conversation between a defendant and the informant does not violate any of the defendant's rights and recordings made from such transmissions are admissible in evidence.

*Nardone, supra,* also provides that a defendant in a criminal case who asserts that evidence against him was improperly obtained by wire tapping has the burden of proving to the trial court's satisfaction the truth of the assertion. Our Circuit in *Nolan v. United States,* 423 F.2d 1031 (Tenth Cir. 1970) had occasion to treat with the procedure and the burden of proof in a case in which it was alleged that evidence had been obtained by the Government by illegal wire tapping. It was held in *Nolan,* supra, that after inspecting the recordings and transcripts of alleged illegal electronic surveillance, the burden was on the defendant to prove that illegal electronic surveillance of himself had occurred and then the ultimate burden of persuasion against illegality and taint was on the Government and at the same time defendant was required to go forward with specific evidence demonstrating illegality and taint.

The Defendants appear to claim with reference to these Motions that the evidence obtained by electronic surveillance of them was (1) illegally obtained by the Government and (2) that any consent regarding the same by the informant (John Rogers) was obtained by the Government by coercion.

■ The Defendants presented no evidence of a direct[3] 47 U.S.C. § 605 violation. This was so notwithstanding the Court more or less insisting that a knowledgeable and responsible person from both the FBI

---

2. In pertinent part this Section provides that: ". . . no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person."

3. By a direct violation is meant an interception accomplished without the consent of either party to the conversation.

and the IRS for the State of Oklahoma be presented for examination on this point. Such persons were presented and were examined.[4] The Court finds and concludes that no evidence has been presented to show a direct[5] 47 U.S.C. § 605 violation. The Defendants have failed to carry their burden in this respect.

The informant called by the Defendants testified that as to all recordings and tapes he freely and voluntarily gave his consent to the Government to all interceptions and recordings and transmissions, both verbally and in writing on some occasions. All of the Defendants' efforts were directed toward establishing that such consent of the informant was coerced by the Plaintiff and thus was involuntary. Questioning in this direction dwelled largely on the informant's past difficulties with or investigations by the Federal Government in other matters than the subject matter of this Indictment.

Coercion is defined in *Garrity v. New Jersey,* 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967) as the exertion of such pressure upon an individual as to disable him from making a free and rational choice. In *Good v. United States,* 378 F.2d 934 (Ninth Cir. 1967) and *McClure v. United States,* 332 F.2d 19 (Ninth Cir. 1964), cert. den., 380 U.S. 945, 85 S.Ct. 1027, 13 L.Ed.2d 963 it is stated that an expectation of leniency is not coercion. In *United States v. Osser,* 483 F.2d 727, 730 (Third Cir. 1973), cert. den., 414 U.S. 1028, 94 S.Ct. 457, 38 L.Ed.2d 221, the Court stated:

"Our inquiry on appeal is limited to whether the consent was voluntary and uncoerced, not whether the motivations for it were altruistic or self-seeking. As the court said with respect to hopes for leniency in *United States v. Zarkin,* 250 F.Supp. 728, 737 (D.C.C.1966):

We can think of no time in which a party to a telephone conversation would permit the police to intercept that conversation when he, himself, would not seek something from the police in return, assuming he is of sound mind and knows the police are police. He might merely be seeking police protection from threatening phone calls. Or, he might be an undercover policeman who seeks his paycheck. Or, indeed, he may be seeking leniency. However, so long as pressure is not initiated by the police for the purpose of overbearing the will of the party, this Court does not believe that the authorization given by the party is involuntary."

The Court finds and concludes from the evidence that Defendants have not in any sense established that the consent of the informant to the electronic surveillance of Defendants by means of his telephones and his body was coerced by the Government. His consent to such electronic surveillance of Defendants appears to have been freely and voluntarily given and moreover, was given in concert with participation therein by the Attorney General of Oklahoma, the chief law enforcement officer of the State of Oklahoma. No evidence

---

4. The Special Agent of the FBI in charge of this case testified that there was no electronic surveillance of Defendants accomplished except that reflected by the transcripts and the tapes furnished (and to be furnished) Defendants by the Government and that if there was any other electronic surveillance which had any relation to this case that as agent in charge of this case it would be known to him. The attorney for the Government in its response to these Motions has stated that there was no other electronic surveillance of the Defendants beyond that supplied (or to be supplied) the Defendants which has any bearing on this case.

The Chief of the Intelligence or Criminal Division of the IRS for the Oklahoma City Division (for the past three years and an assistant to the Chief for four years prior thereto) testified that the IRS was not in any way involved with this case and conducted no electronic surveillance of the Defendants regarding this case. In response to the question of Defendants as to whether the IRS had ever conducted any electronic surveillance of the Defendants, the witness testified that in a tax investigation involving the Defendant Hall three telephone conversations he had with his former secretary were recorded but with her consent. Further, that there was no other electronic surveillance of Defendant Hall by the IRS. These three telephone recordings above mentioned were furnished the Court for an in camera inspection which reveals that the contents thereof have absolutely nothing to do with this case in any way, shape or form.

5. See page 518.

has been presented to the Court which would constitute in any sense the exertion of such pressure on the informant by the Government which disabled him from making a free and rational choice about consenting to electronic surveillance. The evidence discloses that the informant went to the Federal Government with information about this case—the Federal Government did not go to him. And this was the first information coming to the attention of the Federal Government regarding this case. And he went to the Federal Government after conferring with the Attorney General of Oklahoma. It further appears that such consent was given without the use by the Government of any force, threats or promises; that his criminal tax investigation had been concluded favorably to him and the following civil tax examination had been concluded and settled, both prior to the occurrence of anything which has been brought to the attention of the Court with reference to the subject matter of this Indictment. Also, an SEC investigation of the informant by the Federal Government appears to have been concluded several years ago and the matter of a "special campaign fund" which the Government was interested in appears to have been resolved, though perhaps not concluded, prior to the occurrence of the informant's first visit to the FBI with information about the subject matter of this Indictment. The informant testified that this campaign fund matter had absolutely nothing to do with his consent to the electronic surveillance of Defendants.

Accordingly, the Motions to Suppress the evidence obtained by the Government by means of electronic surveillance of the Defendants should be overruled and such evidence admitted at trial with the jury to be given appropriate instructions as to its consideration of the same.

 The Defendants' Motions for Disclosure of Electronic Surveillance and to Suppress same requested a hearing at the earliest possible date which request has been granted and the hearing conducted. The Court assumes from the Response of the Plaintiff to said Motions and the events of the evidentiary hearing which has been conducted that the Plaintiff has or soon will furnish all the demands of the Defendants with reference to electronic surveillance material. In this connection it appears that no judicial approval was sought with reference to the Plaintiff's electronic surveillance conducted herein. Those requests of Defendants in the Motions under consideration for internal government documents made by Government agents in connection with this case are not discoverable under Rule 16(b), Federal Rules of Criminal Procedure. The requests of Defendants as contained in their Motions under consideration that the Indictment herein be dismissed as to them because of illegally obtained evidence is denied for there has been no showing made that the Indictment was based upon illegally obtained evidence as heretofore set out in this Order. Defendants' request for a continuing disclosure need not be treated by the Court in view of Rule 16(g), Federal Rules of Criminal Procedure. Defendants' final request for a protective order that the electronic surveillance material be only disseminated to counsel of record for Defendants and not disclosed to anyone else without the expressed written permission of the Defendants is denied. Defendants' supporting Brief is silent on this point. No showing has been made to the Court under Rule 16(e), Federal Rules of Criminal Procedure, to warrant granting this request. In view of what has been presented to the Court in regard to these Motions and this included request, the Court in its discretion finds no need for such a protective order. Moreover, it would appear that such a protective order would be unduly restrictive on the Plaintiff in its utilization of such material prior to and at the trial.

It is so ordered this 10th day of February, 1975.

## ON MOTION TO DISMISS FIRST DEFENDANT

The defendant, W. W. Taylor, has filed herein his Motion to Dismiss the Indict-

ment. The thrust of his first proposition is that Count I alleges defendant David Hall attempted to extort money from him and that this is a complete defense to the charges in Counts II, V and VI, that he schemed to bribe Hall and John Rogers. He claims that bribery and extortion are mutually exclusive and reasons that he could not be both a victim and conspirator. He concludes:

"Essentially the indictment fatally contradicts itself when it alleges that the same transaction constitutes both extortion and bribery."

The argument is deceptively appealing for it ignores the allegations concerning the bribery of John Rogers.

In Count I Hall as the sole defendant is alleged to have attempted extortion from W. W. Taylor, R. Kevin Mooney and/or G.I.C. Count II charges a conspiracy by Hall, Taylor and Mooney in violation of 18 U.S.C. § 371. The object of the conspiracy is to violate 18 U.S.C. § 1952 by interstate travel and the use of interstate communication facilities with intent to promote and carry on an unlawful activity. The unlawful activity is described as a scheme to bribe Oklahoma officials in violation of 21 O.S. § 381 and for them to accept the bribe in violation of 21 O.S. § 382. Twenty-one overt acts in the furtherance of the conspiracy are detailed. Specifically the agreement by the conspirators Taylor and Mooney to pay $50,000 to Hall and his offer to Rogers to pay him one-half of this sum to influence his action as Chairman of the Board of Trustees of the Oklahoma Public Employees Retirement System in considering Taylor's investment proposal for the System is alleged. Counts V and VI are the only other counts involving Taylor. These allege that on two different occasions he and Mooney traveled from Texas to Oklahoma City to carry on a scheme to bribe David Hall *and John Rogers* in violation of the travel act.

It has been noted with approval that it is the modern trend of the federal courts to hold that bribery and extortion as used in the Hobbs Act are not mutually exclusive.

*United States v. Braasch,* 505 F.2d 139, 151 n. 7 (CA7 1974).

A defense similar to one projected by the defendant Taylor was rejected in *United States v. Kahn,* 472 F.2d 272, 278 (CA2 1973), the court stating:

"Almost every bribery case involves at least some coercion by the public official; the instances of honest men being corrupted by 'dirty money,' if not non-existent, are at least exceedingly rare. The proper response to coercion by corrupt public officials should be to go to the authorities, not to make the payoff. Thus, unless the extortion is so overpowering as to negate criminal intent or willfulness, we would be loath to allow those who give in to the illegal coercion to claim it as a total defense to bribery charges."

Nevertheless, if we accept as valid the premise of the defendant that he cannot be both the victim and seducer of Hall, it does not follow that the Indictment is fatally defective. By analogy he has suggested that it is like charging Hall with rape and Taylor with prostitution when they go to bed with each other. Extending the analogy further, the court knows of no reason that the rapist and the prostitute could not unlawfully conspire to lure a third party into their bed to seduce him for their mutual profit. Here, regardless of whether we treat the allegations of payment to Hall in Counts II, V and VI as extortion or bribery the counts clearly charge the attempt to bribe Rogers. The transactions between Taylor and Hall cannot be held to have immunized both for their transgressions against Rogers. Both the giver and the taker of a bribe may be charged as co-conspirators to violate 18 U.S.C. § 1952. *United States v. Corallo,* 281 F.Supp. 24, 28 (S.D.N.Y.1968):

" . . . But this indictment does not charge a conspiracy to commit bribery but rather a conspiracy to violate Section 1952 in that, as part of the conspiracy, the alleged conspirators would travel and would use a facility of interstate commerce in furtherance of the

bribe. There is an essential element of the offense here charged which would not be required in a charge of conspiracy to bribe, namely, the travel in interstate commerce or the use of a facility in interstate commerce to aid the unlawful activity."

Finally, if there were repugnancy among the counts, and the court does not agree that there is, this does not require a dismissal of the Indictment against the defendant. The technical charge of repugnancy applies to a contradiction between material allegations in a count. *Sunderland v. United States,* 19 F.2d 202 (CA8 1927); *United States v. Briggs,* 54 F.Supp. 731 (D.D.C.1944). While such repugnancy may render a count bad, repugnancy between counts does not necessarily render an Indictment objectionable. There is no rule which forbids the joinder of offenses otherwise properly joined on the ground that they are inconsistent. See *United States v. Van Scoy,* 482 F.2d 347 (CA10 1973). In *People v. Anderson,* 75 Cal.App. 365, 242 P. 906 (1926) the court sustained a two-count Indictment, the first for extortion and the other for bribery, over objection that the commission of one precluded and refuted any possibility of the commission of the other. It is within the power of the Grand Jury to indict a defendant for offenses which may seem "repugnant". *United States v. Valenti,* 74 F.Supp. 718 (W.D.Pa. 1947).

Next the defendant contends that:

"Said Indictment does not state a claim in Counts II, V and VI because the facts alleged to support the bribery allegations do not state an offense under Section 381 or Section 382 of Title 21 of Oklahoma Statutes, which in turn destroys the conspiracy charge under Section 371, Title 18 United States Code in Count II and the 'Travel Act' charges under Section 1952 of Title 18, United States Code in Counts II, V and VI of the Indictment."

Essential to the validity of Counts II, V and VI are adequate allegations of an intent to carry on any unlawful activity. Section 1952 of Title 18, United States Code defines "unlawful activity" so far as pertinent here, as "extortion, bribery, or arson in violation of the laws of the State in which committed". In *United States v. Rizzo,* 418 F.2d 71, 74 (CA7 1969), cert. denied, 397 U.S. 967, 90 S.Ct. 1006, 25 L.Ed.2d 260 the court held:

"The gravamen of the charge under Sections 371 and 1952 is the violation of federal law. As it relates to the substantive counts, the offense is the use of an interstate facility, with the intent to promote or further an unlawful activity in violation of state law, and the performance of some act designed to promote or further that illegal purpose. Reference to state law is necessary only to identify the type of unlawful activity in which the defendants intend to engage. It is not necessary to allege the elements of the state substantive offense intended to be committed." Citations omitted.

■ The unlawful activity alleged in these counts is two-fold: the bribery of John Rogers and David Hall in violation of 21 O.S. § 381 and the acceptance of a bribe by David Hall in violation of 21 O.S. § 382. The defendant Taylor's argument ignores the allegations concerning the bribery of Rogers and maintains that the allegations concerning the bribery of Hall are insufficient to show a violation of Oklahoma law for the reason that Hall was not a member of the Board of Trustees of the Oklahoma Public Employees Retirement System and that Taylor's investment proposal would never come before him in his official capacity as required by 21 O.S. §§ 381 and 382. Assuming arguendo the insufficiency of the allegations to establish unlawful activity consisting of bribery of David Hall, such defect is not fatal to the Indictment. The allegations concerning the attempt to bribe Rogers are sufficient to establish the necessary unlawful activity. Pursuant to the scheme to bribe him it is alleged in Overt Act 3 of Count II that Hall offered him $25,000 to help Hall get the investment proposal from Taylor accepted by the Board of Trustees. John Rogers as Secretary of State was Chairman of that Board and the

matter would come before him in his official capacity. The essential elements of a violation of 21 O.S. § 381 are sufficiently covered by these allegations. Proof in support of these allegations concerning the attempted bribery of Rogers will establish the unlawful activity essential to conviction of the defendant Taylor of conspiring to violate 18 U.S.C. § 1952 in Count II and the substantive counts of violations of the Travel Act in Counts V and VI.

The validity of the Indictment is not affected by the fact that the pleader may have mistakenly stated the acts alleged to be a violation of both 21 O.S. §§ 381 and 382. *Prussian v. United States,* 282 U.S. 675, 51 S.Ct. 223, 75 L.Ed. 610 (1931). In *Ford v. United States,* 273 U.S. 593, 47 S.Ct. 531, 71 L.Ed. 793 (1927) the defendants had been charged with conspiracy to commit offenses against the United States in violation of (1) the National Prohibition Act, (2) the Tariff Act and (3) the Treaty with Great Britain and in considering the attack upon the Indictment the court stated:

> "The validity of the indictment is attacked, first, because it charges that the conspiracy was to violate the treaty, although the treaty creates no offense against the law of the United States. This is true, but that part of the indictment is merely surplusage and may be rejected. *Bailey v. United States* [5 Cir.], 5 F.(2d) 437; *Remus v. United States* [6 Cir.], 291 F. 501; *United States v. Weiss* [7 Cir.], 293 F. 992, 995; *United States v. Drawdy* [5 Cir.], 288 F. 567, 570. The trial court took this view. But it is contended that this is to amend the indictment, and comes within the inhibition of the principle of *Ex parte Bain,* 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849. That decision condemns the striking out of words from an indictment. The action here complained of is merely a judicial holding that a useless averment is innocuous and may be ignored."

In *United States v. Strauss,* 283 F.2d 155 (CA5 1960) the defendant was charged in a single count with conspiracy to violate both the Mail Fraud and the Bankruptcy Act. The court found the charge insufficient with regard to the Mail Fraud Statute but adequate as to the Bankruptcy Act. It then stated:

> "It is further clear that the failure of the indictment against appellee Strauss to charge adequately a violation of the Mail Fraud Statute is effective merely to eliminate that charge from the case; and so long as the remaining portions of the indictment adequately charge a crime, the presence of the surplusage will not justify dismissal of the entire indictment as it related to appellee."

See also *Bary v. United States,* 292 F.2d 53 (Tenth Cir. 1961).

Accordingly, having determined that there is not cause to dismiss any of Counts II, V, and VI of the Indictment against the defendant W. W. Taylor, his Motion to Dismiss will be denied.

IT IS SO ORDERED.

### ON MOTIONS TO DISMISS
### SECOND DEFENDANT

The defendant, David Hall, first moves the court to dismiss count 1 of the Indictment for the failure to state factual elements sufficient to establish a violation of 18 U.S.C. § 1951 as it purports to do. Specifically, he contends that the count is defective because it does not allege he "actively induced the payment of money to him by those making the payments".

The test of sufficiency of an indictment is that "it contains 'the elements of offense intended to be charged and must be sufficient to apprize the accused of the nature of the offense so that he may adequately prepare a defense'." *United States v. Mason,* 440 F.2d 1293, 1296 (CA10 1971), cert. denied, 404 U.S. 883, 92 S.Ct. 219, 30 L.Ed.2d 165.

It has been further stated:

> "The sufficiency of indictment must be determined on the basis of practical rather than technical considerations and the validity of attacks on them must be considered from a broad and enlightened standpoint of right reason rather than

from a narrow view of technicality and hairsplitting." *Robbins v. United States,* 476 F.2d 26, 30 (CA10 1973).

■ There are two essential elements giving rise to a violation of the Hobbs Act: Interference with commerce and extortion. *Stirone v. United States,* 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960). Applying the definition of extortion contained in the statute the elements may be enlarged in this manner: (1) interference with interstate commerce (2) obtaining or attempting to obtain, or conspiring to obtain property from another, (3) with his consent, (4) induced by wrongful use of actual or threatened force, violence, or fear or under color of official right. *United States v. Howe,* 353 F.Supp. 419 (W.D.Mo.1973). Only the sufficiency of the allegations to establish the fourth element is questioned here. The defendant apparently assumes that it is necessary to allege that he used or threatened force, violence or fear to induce the payment of money. This construction of the statute ignores its disjunctive language and fails to distinguish extortion by private individuals and extortion by public officials. The distinction is pointed out in *United States v. Kenny,* 462 F.2d 1205, 1229 (CA3 1972), cert. denied, 409 U.S. 914, 93 S.Ct. 233, 34 L.Ed.2d 176:

> " . . . But while private persons may violate the statute only by use of fear and public officials may violate the act by use of fear, persons holding public office may also violate the statute by a wrongful taking under color of official right. The term 'extortion' is defined in § 1951(b)(2):
>
>> 'The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.'
>
> The 'under color of official right' language plainly is disjunctive. That part of the definition repeats the common law definition of extortion, a crime which could only be committed by a public official and which did not require proof of threat, fear or duress."

In *United States v. Braasch,* 505 F.2d 139, 151 n. 8 (CA7 1974) the court commented:

> "It may be true that duress is an essential element of a case prosecuted under the provision of the Hobbs Act relating to 'wrongful use of actual or threatened force, violence, or fear', but coercive extortion is not the only type outlawed by the Act. The other is inducing payoffs 'under color of official right'; and that offense does not require proof of coercion."

■ In pertinent part count 1 alleges the attempt to obtain money "which money was not due him from W. W. Taylor, R. Kevin Mooney and/or G.I.C., with the consent of said persons and/or corporation, induced under color of official right, that is to say to obtain said money by virtue of the defendant's position as Governor of Oklahoma." This alleges the inducement of a payment under color of official right. The motivation for the payment was for the Governor to use his power to influence the actions of certain members of the Board of Trustees of the Oklahoma Public Employees Retirement System. It focused upon the office of the Governor and the acts that defendant Hall was to perform were to be undertaken in his official position. The defendant Hall was allegedly using his office to attempt to obtain the payment of money to him and such conduct constitutes a violation of the statute. In *United States v. Braasch,* id. at 151 it is stated:

> " . . . The use of office to obtain payments is the crux of the statutory requirement of 'under color of official right', and appellants' wrongful use of official power was obviously the basis of this extortion. See *United States v. Staszcuk,* 502 F.2d 875 (7th Cir. 1974). It matters not whether the public official induces payments to perform his duties or not to perform his duties, or even, as here, to perform or not to perform acts unrelated to his duties which can only be undertaken because of his official position. So long as the motivation for the payment focuses on the recipient's office, the conduct falls within the ambit of 18

U.S.C. § 1951. That such conduct may also constitute 'classic bribery' is not a relevant consideration."

Count 1, therefore, sufficiently alleges the elements of the offense intended to be charged.

The defendant's second Motion to Dismiss is directed at counts 2, 3 and 4 of the Indictment. The first theory propounded is that "said Indictment is fatally inconsistent in that it alleges a set of facts in count I that provide a complete legal defense for defendant Hall as to all subsequent counts." Hall is named in the first four counts of the Indictment. As noted above the first count charges attempted extortion of money from Taylor and Mooney. Count 2 charges a conspiracy by Hall, Taylor and Mooney in violation of 18 U.S.C. § 371. The object of the conspiracy is to violate 18 U.S.C. § 1952 by interstate travel and the use of interstate communication facilities with intent to promote and carry on an unlawful activity. The unlawful activity is described as a scheme to bribe Oklahoma officials in violation of 21 O.S. § 381 and for them to accept the bribe in violation of 21 O.S. § 382. Twenty-one overt acts in the furtherance of the conspiracy are detailed. Count 3 charges defendant Hall alone with a substantive violation of 18 U.S.C. § 1952 by making an interstate telephone call from San Diego, California, to John Rogers in Oklahoma City to promote and carry on an unlawful activity. Specifically the unlawful activity intended in this count is to bribe John Rogers in violation of 21 O.S. § 381 and facilitate the acceptance of a bribe by the defendant David Hall in violation of 21 O.S. § 382. Count 4 makes the same allegations with respect to a telephone call from Salt Lake City, Utah to John Rogers in Oklahoma City, Oklahoma.

Apparently it is defendant Hall's theory that somehow it is inconsistent for him to attempt to extort money as alleged in count 1 and to use interstate facilities, and conspire to do so, to bribe John Rogers to influence the Board of Trustees of the Oklahoma Public Employees Retirement System. In short, he argues that he cannot be an extortionist, conspirator and briber together. There is, however, no logical inconsistency in the three roles. He is an actor in all three and not a victim. The court perceives no reason or legal barrier to conclude that Hall could not attempt to extort money from Mooney and Taylor and attempt to bribe Rogers by offering to share with him the money he was to receive. Counts 1 through 4 are not mutually exclusive. Rule 8(a), Federal Rules of Criminal Procedure provides:

"*Joinder of Offenses.* Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan."

Since it appears that the offenses alleged against the defendant, David Hall, in counts 1, 2, 3 and 4 of the Indictment are based on "two or more acts or transactions connected together or constituting parts of a common scheme or plan" the court concludes that there is not an improper enjoinder of offenses.

If defendant's argument focuses solely on his role in count 2 as the receiver of a bribe and his co-conspirators as the givers of that bribe, and he relies on the principle that the giver and receiver of a bribe cannot be prosecuted for a conspiracy because the crime of bribery requires the participation of two parties, then his reliance is misplaced. In *United States v. Corallo,* 281 F.Supp. 24, 28 (S.D.N.Y.1968) the defendants including both the givers and taker of a bribe were charged with conspiracy under 18 U.S.C. § 371 to violate 18 U.S.C. § 1952 to carry on the unlawful activity of violating New York Bribery laws, and the court answered such argument in this manner:

" . . . But this indictment does not charge a conspiracy to commit bribery but rather a conspiracy to violate Section 1952 in that, as part of the con-

spiracy, the alleged conspirators would travel and would use a facility of interstate commerce in furtherance of the bribe. There is an essential element of the offense here charged which would not be required in a charge of conspiracy to bribe, namely, the travel in interstate commerce or the use of a facility in interstate commerce to aid the unlawful activity."

Finally, if there were repugnancy among the counts, and the court does not agree that there is, this does not require a dismissal of the Indictment against the defendant. The technical charge of repugnancy applies to a contradiction between material allegations in a count. *Sunderland v. United States,* 19 F.2d 202 (CA8 1927); *United States v. Briggs,* 54 F.Supp. 731 (D.D.C.1944). While such repugnancy may render a count bad, repugnancy between counts does not necessarily render an Indictment objectionable. There is *no rule* which forbids the joinder of offenses otherwise properly joined on the ground that they are inconsistent. See *United States v. Van Scoy,* 482 F.2d 347 (CA10 1973). In *People v. Anderson,* 75 Cal.App. 365, 242 P. 906 (1926) the court sustained a two-count Indictment, the first for extortion and the other for bribery, over objection that the commission of one precluded and refuted any possibility of the commission of the other. It is within the power of the Grand Jury to indict a defendant for offenses which may seem "repugnant". *United States v. Valenti,* 74 F.Supp. 718 (W.D.Pa. 1947).

As a further ground to dismiss counts 2, 3 and 4 the defendant states that:

"Said indictment does not state a crime in counts II, III and IV because the facts alleged to support the bribery allegation do not state an offense under Section 381 or Section 382 of Title 21, Oklahoma Statutes, which in turn destroys the conspiracy charge under Section 371, Title 18 of the United States Code in Count II and the Travel Act charges under Section 1952 of Title 18 United States Code in Counts II, V, and VI of the indictment."

Essential to the validity of counts 2, 3 and 4 are adequate allegations of an intent to carry on any unlawful activity. Section 1952 of Title 18, United States Code defines "unlawful activity" so far as pertinent here, as "extortion, bribery, or arson in violation of the laws of the State in which committed". In *United States v. Rizzo,* 418 F.2d 71, 74 (CA7 1969), cert. denied, 397 U.S. 967, 90 S.Ct. 1006, 25 L.Ed.2d 260 the court held:

"The gravamen of the charge under both Sections 371 and 1952 is the violation of federal law. As it relates to the substantive counts, the offense is the use of an interstate facility, with the intent to promote or further an unlawful activity in violation of state law, and the performance of some act designed to promote or further that illegal purpose. Reference to state law is necessary only to identify the type of unlawful activity in which the defendants intend to engage. It is not necessary to allege the elements of the state substantive offense intended to be committed." Citations omitted.

The unlawful activity alleged in these counts is two-fold: the bribery of John Rogers in violation of 21 O.S. § 381 and acceptance of a bribe by David Hall in violation of 21 O.S. § 382. The defendant Hall's argument ignores the allegations concerning the bribery of Rogers and maintains that allegations concerning acceptance of a bribe by Hall are insufficient to show a violation of Oklahoma law for the reason that Hall was not a member of the Board of Trustees of the Oklahoma Public Employees Retirement System and the Taylor investment proposal would never come before him in his official capacity as required by 21 O.S. § 382. Assuming arguendo the insufficiency of the allegations to establish the unlawful activity consisting of accepting a bribe, such defect is not fatal to the indictment. The allegations concerning the attempt to bribe Rogers are sufficient to establish the necessary unlawful activity. Pursuant to the scheme to bribe him it is alleged in Overt Act 3 of Count 2 that Hall offered him $25,000 to help Hall get the investment proposal from Taylor accepted

by the Board of Trustees. John Rogers as Secretary of State was Chairman of that Board and the matter would come before him in his official capacity. The essential elements of a violation of 21 O.S. § 381 are sufficiently covered by these allegations. Proof in support of these allegations concerning the attempted bribery of Rogers will establish the unlawful activity essential to conviction of conspiracy to violate 18 U.S.C. § 1952 in count 2 and the substantive violation of the Travel Act in counts 3 and 4.

The validity of the Indictment is not affected by the fact that the pleader may have mistakenly stated the acts alleged to be a violation of both 21 O.S. §§ 381 and 382. *Prussian v. United States*, 282 U.S. 675, 51 S.Ct. 223, 75 L.Ed. 610 (1931). In *Ford v. United States*, 273 U.S. 593, 47 S.Ct. 531, 71 L.Ed. 793 (1927) the defendants had been charged with conspiracy to commit offenses against the United States in violation of (1) the National Prohibition Act, (2) the Tariff Act and (3) The Treaty with Great Britain and in considering the attack upon the Indictment the court stated:

> "The validity of the indictment is attacked, first, because it charges that the conspiracy was to violate the treaty, although the treaty creates no offense against the law of the United States. This is true, but that part of the indictment is merely surplusage and may be rejected. *Bailey v. United States* [5 Cir.] 5 F.2d 437; *Remus v. United States* [6 Cir.] 291 F. 501; *United States v. Weiss* [7 Cir.] 293 F. 992, 995; *United States v. Drawdy* [5 Cir.] 288 F. 567, 570. The trial court took this view. But it is contended that this is to amend the indictment and comes within the inhibition of the principle of *Ex parte Bain*, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849. That decision condemns the striking out of words from an indictment. The action here complained of is merely a judicial holding that a useless averment is innocuous and may be ignored."

(Emphasis supplied)

In *United States v. Strauss*, 283 F.2d 155 (CA5 1960) the defendant was charged in a single count with conspiracy to violate both the Mail Fraud and the Bankruptcy Act. The court found the charge insufficient with regard to the Mail Fraud Statute but adequate as to the Bankruptcy Act. It then stated:

> "It is further clear that the failure of the indictment against appellee Strauss to charge adequately a violation of the Mail Fraud Statute is effective merely to eliminate that charge from the case; and so long as the remaining portions of the indictment adequately charge a crime, the presence of the surplusage will not justify dismissal of the entire indictment as it relates to appellee."

See also *Bary v. United States*, 292 F.2d 53 (Tenth Cir. 1961).

Accordingly, having determined that there is no cause to dismiss any of counts 1, 2, 3 and 4 of the Indictment against the defendant, David Hall, his Motions to Dismiss will be denied.

IT IS SO ORDERED.

## ON MOTIONS FOR PRODUCTION AND EXAMINATION OF GRAND JURY MINUTES AND EVIDENCE

Defendant Hall has filed a Motion For Production of Testimony Heard by Grand Jury And For Examination of Grand Jury Minutes and Evidence. In such Motion he requests to examine the minutes of the Grand Jury for each session in which evidence was produced with respect to the Indictment. He specifically requests copies of the transcript of the testimony of unspecified witnesses who could be described as (a) an unindicted participant, (b) an unindicted co-conspirator, (c) a governmental agent, informant, or "false friend", or (d) one who offered incriminating testimony. He also requests to be allowed to inspect all documentary and physical evidence presented to the Grand Jury. The Government has Responded to said Motion. It states the Grand Jury minutes are filed with the Clerk of the Court and that it does not object to Defendant examining same. The Govern-

ment urges that the Motion be denied as to all other matters.

## GRAND JURY MINUTES

The Court will grant Defendant Hall's Request to Inspect the Grand Jury minutes as they relate to this case only and this Order is the authority for the Clerk of this Court to allow Defendant or his attorney to inspect same as they are relevant to Defendant's Indictment in this case.

## GRAND JURY TESTIMONY

In his Motion, Defendant Hall urges he has a particularized need for the Grand Jury testimony. He states that in this conspiracy case the information is necessary to impeach the testimony of witnesses, test their credibility and to prepare Motions to Dismiss. He further urges that such testimony will aid his counsel in developing facts to "show entrapping activities of 'false friends.'" He also states such testimony is necessary to prepare a proper cross-examination of parties expected to testify to include Rogers and law enforcement officials. He further moves that in the event all testimony was not transcribed, that the Court make an inquiry as to why all testimony was not transcribed and that the Indictment be dismissed.

█ The Government in its Response advises that not all testimony before the Grand Jury in this matter was transcribed. It urges it is not required to do so. The Government is correct in this regard as there is no requirement that Grand Jury testimony be transcribed. *United States v. Cooper,* 464 F.2d 648 (Tenth Cir. 1972); *United States v. Goad,* 426 F.2d 86 (Tenth Cir. 1970). Defendant Hall's request for the Court to inquire as to why all testimony was not transcribed is denied. His Motion to Dismiss on this basis is likewise denied.

The basis for Defendant Hall's request for Grand Jury testimony upon a showing of a "particularized need" is found in *Dennis v. United States,* 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966). *Dennis* which arose in the Tenth Circuit has been con-

sidered numerous times by that Court. Some of these cases include *Cargill v. United States,* 381 F.2d 849 (Tenth Cir. 1967); *United States v. Quintana,* 457 F.2d 874 (Tenth Cir. 1972); and *United States v. Parker,* 469 F.2d 884 (Tenth Cir. 1972). Another matter which should be considered in regard to a request for transcripts of Grand Jury testimony is that the Jencks Act in 18 U.S.C. § 3500 was amended in 1970 to include Grand Jury testimony of a witness among those statements which must be made available to the defense after a witness testifies. This amendment is wholly consistent with the ruling in *Dennis* which held that the Grand Jury testimony for which a "particularized need" was shown should have been available for examination while the witnesses were available for cross-examination.

█ The determination as to what constitutes a "particularized need" rests in the sound discretion of the Court. *United States v. Parker, supra.* It was held in *Parker* that the disclosure of the Grand Jury testimony need only be accomplished at such time "while those witnesses were available for cross examination" citing *Dennis.* Thus, the Jencks Act 1970 Amendment appears to have codified the holding in *Dennis* without the showing of a "particularized need."

█ In the instant case, the allegations as to "particularized need" relating to impeachment of a witness' testimony would apply in any and all proceedings. The allegations relating to testing the credibility of witnesses and to aid in preparation of cross-examination is not peculiar to this case. It is doubted that these statements constitute a showing of "particularized need." Many circumstances present in *Dennis* are not present herein to include a long period of time between the happenings or events involved and the time of the Grand Jury testimony and the time of trial. Some of the *Dennis* circumstances are present in this conspiracy case as alleged by Defendant Hall. Under the circumstances, and out of an abundance of caution, the Court in exercising its discretion Orders the Government

to provide copies of the Grand Jury transcripts of witnesses to the proceedings which were recorded to Defendant Hall upon the payment of the customary fees for copies of transcripts. Said transcripts shall be delivered to Defendant Hall or his counsel in the offices of the United States Attorney, United States Court House, Oklahoma City, Oklahoma, at 10:00 a. m., Friday, February 14, 1975.

## DOCUMENTARY AND PHYSICAL EVIDENCE

The Court has in another Order in this case considered multiple requests for material which is to be used by the Government as evidence in this case. It appears that transcripts and duplicate copies of the tape recordings and matters relating thereto which are to be used in the trial have been furnished Defendants, except for a few tapes now at the Federal Bureau of Investigation Laboratory which will soon be furnished to Defendants. On the basis that these tapes or some of them may have been heard by the Grand Jury the Defendants' request for this evidence as presented to the Grand Jury has been satisfied. Other evidence under previous Orders will be turned over to Defendants at the same time and place designated above. This should include any other documentary or physical evidence presented to the Grand Jury. The Court in the exercise of its discretion under these circumstances grants the request to inspect all documentary and physical evidence presented to the Grand Jury on the above basis.

It is so ordered this 12th day of February, 1975.

## ON MOTION FOR DISCOVERY REGARDING NAMED WITNESS

Defendant Hall has filed a Motion for Discovery of Information Regarding John M. Rogers, Jr. Said Motion which is supported by a Brief requests that the United States Attorney furnish information as to its witness Rogers which would tend to discredit or impeach his testimony. Defendant Hall requests information as to any agreements made with Rogers concerning the investigation of matters concerning this case and his furnishing testimony to the Grand Jury and in the trial of this case. In the Motion, Movant also seeks knowledge of information which would suggest that Rogers has been involved in any unlawful and illegal activities. This Motion is quite similar to another Motion filed by Defendant Hall which has been considered by the Court relating to Co-defendant Mooney and other witnesses. Defendant's primary authority cited in support of the instant Motion is the case of *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) which was also his primary authority in the companion Motion relating to Co-defendant Mooney. This Motion is also closely related to Defendants' Motion for Disclosure of Electronic Surveillance, et al., for which the Court conducted an evidentiary hearing on the issue of whether the Government witness Rogers had been coerced into agreeing to tape record certain telephone and other conversations relating to matters charged in the Indictment herein. In effect, the information sought in the instant Motion was disclosed in said evidentiary hearing as it related to Federal Government investigations of the activities of Rogers.

The Plaintiff's Supplemental Response to this Motion states that its witness Rogers had been subjected to an investigation by the Internal Revenue Service for possible criminal tax law violations commencing in January, 1972, which investigation was concluded at an unknown date favorable to the witness. This response stated that such investigation was not known to the Department of Justice until February 7, 1975, and that it supplemented its original Response in which it had stated that Rogers had not been subjected to any Federal investigation.

During the evidentiary hearing conducted on February 7, 1975 concerning the voluntariness of witness Rogers' allowing conversations to be tape recorded, the relationship of said witness to the instant case and other Federal investigations was gone into in great detail. The information obtained by Defendants at said hearing concerning wit-

ness Rogers appears to the Court to satisfy the requests of the instant Motion in most regards. The information sought which is in the nature of exculpatory evidence has been treated by the Court in other Motions and is not considered further in the instant Motion.

 Under the circumstances, the Motion of Defendant Hall is denied.

It is so ordered this 13th day of February, 1975.

## ON MOTION TO EXCLUDE CERTAIN TESTIMONY

Defendant Taylor has filed a Motion in Limine in which he moves the Court to refuse to admit any tape recordings or hearsay testimony into evidence that do not involve all Defendants, unless or until the evidence establishes that a conspiracy existed and that Defendant Taylor was a member thereof. The only legal authority cited in support of said Motion is *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

The Plaintiff responds to said Motion contending that said Motion goes to the order of proof which is within the discretion of the trial Court. It further urges that in a conspiracy case that it is up to the trial Court to determine whether the jury may consider declarations as to any and all defendants after all the evidence is presented.

The issue considered in *Bruton, supra,* involved a confession of one defendant given to a Government agent which inculpated his co-defendant in the crime charged. In *Bruton, supra,* the Court overruled its decision in *Delli Paoli v. United States,* 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957) in which it had been held that a confession a co-defendant made after the termination of the alleged conspiracy could be used only against the declarant and under proper instructions to the jury protecting other defendants. The Court in *Delli Paoli, supra,* had stated:

"This Court long has held that a declaration made by one conspirator, in furtherance of a conspiracy and prior to its termination, may be used against the other conspirators. However, when such a declaration is made by a conspirator *after the termination of the conspiracy, it may be used only against the declarant and under appropriate instructions to the jury.*"

The only matter considered in *Bruton, supra,* was a declaration made after the conspiracy ended and the rule concerning declarations made in furtherance of the conspiracy does not seem to be affected by *Bruton, supra.* This was the finding in *Campbell v. United States,* 415 F.2d 356 (Sixth Cir. 1969). Moreover, the Supreme Court has continued to follow the rule concerning statements made in furtherance of the conspiracy. In *Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970) the Court stated:

"*It is settled that in federal conspiracy trials the hearsay exception that allows evidence of an out-of-court statement of one conspirator to be admitted against his fellow conspirators applies only if the statement was made in the course of and in furtherance of the conspiracy,* and not during a subsequent period when the conspirators were engaged in nothing more than concealment of the criminal enterprise." (Emphasis supplied).

In the instant case, the tape recordings and evidence which is the subject of Defendant Taylor's Motion if made in the course of and in furtherance of the conspiracy would not be improper under *Bruton, supra.*

 The Court has discretion to admit declarations and acts of alleged co-conspirator subject to later proof of existence of conspiracy. *United States v. Acuff,* 410 F.2d 463 (Fifth Cir. 1969); *United States v. Martinez,* 481 F.2d 214 (Fifth Cir. 1973), cert. den., 415 U.S. 931, 94 S.Ct. 1444, 39 L.Ed.2d 489; *Beckwith v. United States,* 367 F.2d 458 (Tenth Cir. 1966).

Defendant Taylor's Motion in Limine is overruled.

It is so ordered this 13th day of February, 1975.

ON MOTION FOR PRODUCTION OF MATERIAL ESTABLISHING BIAS AND AFFECTING WITNESSES' CREDIBILITY

Defendant Hall has filed a Motion for the Production of Material Establishing Bias of and Interest of and Affecting Credibility of Government Witnesses. Defendant Taylor has adopted said Motion which is supported by a Brief. The Government has responded to said Motion.

Defendants Hall and Taylor seek information pertaining to any Government witnesses to include Co-defendant Mooney which would tend to discredit or impeach said witness. In particular they request information as to agreements or promises given by Plaintiff to any witness in exchange for assistance in investigation of the case and for testimony in said case. They also request information as to knowledge of unlawful and illegal activities of any Government witness. The Motion also contains a request in which Defendants Hall and Taylor ask for information relating to witnesses for the Government which would tend to establish or lend credence to an "entrapment" defense. In this latter request, they seek information as to contacts by witnesses with Government agents and further as to instructions given by said agents to the witnesses. In support of their Motion, Defendants cite *Brady v. Maryland,* 373 U.S. 83, 10 L.Ed.2d 215, 83 S.Ct. 1194 (1963) which is the landmark case on the suppression of exculpatory evidence. In support of the portion of the request relating to the credibility of a witness as affected by promises made by the prosecution in exchange for his testimony they cite *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) and *United States v. Harris,* 462 F.2d 1033 (Tenth Cir. 1972).

In its Response, Plaintiff sets out its agreement with Co-defendant Mooney who has previously entered a plea of guilty to Count II (A conspiracy charge) of the Indictment herein. It admits it has agreed to move to dismiss two other Counts against Defendant Mooney.[1] It denies it has made any other promise to any other witness in regard to the instant case. This response satisfies the requirements of *Giglio, supra,* and *Harris, supra.*

The Plaintiff in its Response denies that it is required to provide Defendants with the requested information as to alleged unlawful or illegal activities of its witnesses. However, it answers this request stating it has no information of this nature concerning any of its witnesses. This is sufficient on this point.

In its Response, Plaintiff urges that Defendants are not entitled to the information requested in respect to information concerning its witnesses which would support a defense of entrapment by Defendants. It cites case law from the Tenth Circuit concerning such a defense. It further urges that Movants have not supported this request specifically. It notes it is obligated to furnish Defendants exculpatory evidence under *Brady, supra,* and that it has responded to another Motion by Defendants in this regard. This Court notes that in *Harris, supra,* the Court considered the plea bargaining information not to be within the specific compulsion of *Brady, supra.*

*Martinez v. United States,* 373 F.2d 810 (Tenth Cir. 1967) provides:

> "It may be described as an affirmative or positive defense and is in the nature of a confession and avoidance. It cannot be applicable to the facts of a particular case unless the commission of the crime charged is admitted by the accused raising the defense."

First, at the evidentiary hearing conducted herein on February 7, 1975 the activities of Rogers herein was fully explored. No other person was shown to be in contact with both the Government and the Defendants. It is believed that the revelations of this hearing together with transcripts and cop-

---

1. In this regard, Defendants Hall and Taylor were present when Defendant Mooney entered his plea of guilty to Count II in the instant case when same came on for arraignment on January 21, 1975 at which time such agreement was noted. Upon inquiry of this Court, Defendant Mooney stated there were no other promises made by the prosecution in this matter.

ies of tape recordings furnished Defendants serve to satisfy the request in this Motion for information to support an entrapment defense. Should either Defendant affirmatively assert this defense the Court will then give consideration to any specific request then made in this regard.

In summary, it appears that the Plaintiff has furnished all requested information sought in the instant Motion in its Response to this and other Motions. Under the circumstances, the Motion of Defendant Hall and as adopted by Defendant Taylor is denied.

It is so ordered this 13th day of February, 1975.

## ON MOTION TO EXAMINE JURORS

Defendant Hall has filed a Motion to Permit Attorneys for Defendant to Examine Jurors. Said Motion is supported by a Brief. Counsel for Defendant Taylor has advised the Court verbally that he adopts said Motion. The Court thus considers the Motion by both Defendants.

The thrust of Defendants' argument is that the requested examination is necessary in the interest of a fair and impartial trial and due process. They assert that a more searching inquiry is necessary to determine if actual bias or prejudice exists in the minds of the jurors. Other reasons are urged which are generally repetitious.

The conduct of voir dire examination is governed by Rule 24(a), Federal Rules of Criminal Procedure which provides:

"The court may permit the defendant or his attorney and the attorney for the government to conduct the examination of prospective jurors or may itself conduct the examination. In the latter event the court shall permit the defendant or his attorney and the attorney for the government to supplement the examination by such further inquiry as it deems proper or shall itself submit to the prospective jurors such additional questions by the parties or their attorneys as it deems proper."

Examination by the Court is authorized by said Rule and is proper in the absence of an abuse of discretion. *United States v. DePugh,* 452 F.2d 915 (Tenth Cir. 1971); *Kreuter v. United States,* 376 F.2d 654 (Tenth Cir. 1967) cert. den. 390 U.S. 1015, 88 S.Ct. 1267, 20 L.Ed.2d 165.

This Court follows the custom of the trial judges in the Tenth Circuit in conducting the voir dire examination itself. *Brundage v. United States,* 365 F.2d 616 (Tenth Cir. 1966); *United States v. Addington,* 471 F.2d 560 (Tenth Cir. 1973). In *Brundage v. United States, supra,* then Chief Judge Murrah stated:

"In this jurisdiction voir dire is customarily conducted by the trial judge and it is his responsibility to probe the minds of the prospective jurors concerning their precognitions, predilections, experiences and any other matters which may peculiarly bear upon their qualifications and competency to serve fairly and impartially in the particular case."

In the instant case, the Court in its discretion will conduct the voir dire examination of prospective jurors itself and the Motion to Permit Attorneys for Defendant to Examine Jurors is denied.

It is so ordered this 22d day of February, 1975.

## ON MOTION TO DISQUALIFY

After having been convicted by a jury of four crimes but before Court rulings on post-conviction Motions and being sentenced by the Court, Defendant Hall has filed a Motion with Affidavit requesting the Judge presiding over his trial to now disqualify himself from further proceedings in the matter. Defendant Hall proceeds under 28 U.S.C. § 144, 28 U.S.C. § 455, and Rule 25, Federal Rules of Criminal Procedure.

It appears to be Defendant Hall's contention that the Motion should be granted on the basis of three assertions as follows:

(1) The Judge agreed to disqualify before the trial but did not do so.

(2) The Judge became hostile toward this Defendant's counsel on March 14, 1975, after the case had been submitted to the jury, and,

(3) The Judge must judge the truth of Dr. Sanbar's testimony which contradicts his own statement in the record.

■ No allegations support the Motion under Rule 25, *supra*,[1] as since the verdicts of guilty herein the presiding Judge has not become absent, dead, sick, disabled or unable to proceed with what remains to be done at the trial level. The assertions of Defendant Hall clearly do not fall within the intent of this rule. On the basis of this Rule the Motion should be overruled.

Likewise the allegations do not support the Motion under 28 U.S.C. § 455, as amended effective December 5, 1974, except as to the assertion of "personal bias or prejudice" which duplicates the same provision in 28 U.S.C. § 144. In this duplication such assertion is controlled by case law developed under 28 U.S.C. § 144.[2] No claim is made that the Judge had personal knowledge of disputed evidentiary facts, or served as a lawyer in the matter, or had been a material witness concerning it, or served in governmental employment and in such capacity participated as counsel or as a witness or expressed an opinion on the merits, or has a financial interest[3] in the subject matter or in a party in the case or that a relative of the Judge's within the third degree is a party, an attorney or witness in the case or has an interest therein that could be substantially affected by the outcome of the proceeding.

The assertion of "personal bias and prejudice" as a ground for relief under 28 U.S.C. § 455 will be treated in conjunction with 28 U.S.C. § 144 and the procedure prescribed therein as utilized herein by Defendant Hall.

28 U.S.C. § 144 provides:

"Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith."

Tested by settled principles of law the Motion and Affidavit should also be overruled under this Statute (and 28 U.S.C. § 455) as they show no "personal bias or prejudice" of the Judge toward Defendant

---

1. The applicable provision of this Rule provides:

 "(b) After Verdict or Finding of Guilt. If by reason of absence, death, sickness or other disability the judge before whom the defendant has been tried is unable to perform the duties to be performed by the court after a verdict or finding of guilt, any other judge regularly sitting in or assigned to the court may perform those duties; but if such other judge is satisfied that he cannot perform those duties because he did not preside at the trial or for any other reason, he may in his discretion grant a new trial."

2. Wright-Miller-Cooper, *Federal Practice and Procedure;* Jurisdiction § 3542 states:

 "Since the key phrase in the new statute 'personal bias or prejudice,' is taken verbatim from Section 144, and there is nothing in the legislative history of the statute or the Code of Judicial Conduct, from which it comes, to indicate to the contrary, it must be expected that decisions construing Section 144 will be thought controlling in interpreting this provision of Section 455."

3. Defendant Hall does mention in his Affidavit that the Judge has a *substantial interest* in the outcome of these proceedings. Such language was contained in 28 U.S.C. § 455 prior to its recent amendment and has been construed to mean a pecuniary or beneficial interest. There is no allegation of this nature in the Motion and Affidavit. See, *United States v. Bell,* 351 F.2d 868 (Sixth Cir. 1965); *In re Grand Jury Proceedings,* 486 F.2d 1013 (Third Cir. 1973).

Hall, are not sufficient and were not timely filed.

Several well recognized rules of law have been developed through the years in disqualification matters related to 28 U.S.C. § 144.

First, there is a presumption of impartiality on the part of judges as to matters before them. *Molinaro v. Watkins-Johnson CEI Division*, 359 F.Supp. 474 (D.Md.1973),

Second, a moving defendant's motion and affidavit does not automatically require a judge to disqualify himself. *United States v. Townsend*, 478 F.2d 1072 (Third Cir. 1973); *Deal v. Warner*, 369 F.Supp. 174 (W.D.Mo.1973),

Third, although the contents of the affidavit are to be taken as true, the affidavit is strictly construed against the affiant and there is a substantial burden upon the moving party to sufficiently demonstrate that the Judge is not impartial. *Scott v. Beams*, 122 F.2d 777 (Tenth Cir. 1941); *Molinaro v. Watkins-Johnson CEI Division, supra; In re Union Leader Corporation*, 292 F.2d 381 (First Cir. 1961); *Beland v. United States*, 117 F.2d 958 (Fifth Cir. 1941), cert. den., 313 U.S. 585, 61 S.Ct. 1110, 85 L.Ed. 1541 (1941); *United States v. Thomas*, 299 F.Supp. 494 (E.D.Mo.1968),

Fourth, the hearsay nature of an affidavit and conclusory opinions therein may be taken into account in judging its sufficiency. *Hodgson v. Liquor Salesmen's U. Loc. No. 2 of the State of New York*, 444 F.2d 1344 (Second Cir. 1971),

Fifth, an adverse ruling at some earlier stage of the case is not sufficient to establish "personal bias". *Berger v. United States*, 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1921); *United States v. Beneke*, 449 F.2d 1259 (Eighth Cir. 1971),

Sixth, the judge has a duty to remain as judge in a case in which he is not disqualified. *United States v. Thomas, supra; Johns Hopkins University v. Hutton*, 316 F.Supp. 698 (D.Md.1970); *United States v. Orbiz*, 366 F.Supp. 628 (D.P.R.1973);

*United States v. Beneke*, 317 F.Supp. 1326 (D.Minn.1970),

Seventh, it is the duty of the judge to whom a motion of disqualification is directed to determine the legal sufficiency of the affidavit to charge, "personal bias." *Berger v. United States, supra; Scott v. Beams, supra; Harris v. Britton*, 361 F.Supp. 528 (W.D.Okl.1973),

Eighth, it is the duty of the judge not to permit the use of a motion or affidavit of prejudice as a means to accomplish delay and otherwise defeat the orderly administration of justice. *United States v. Orbiz, supra,*

Ninth, "Judicial bias" is not sufficient. Bias developed during the trial, if any, is judicial bias and is not "personal bias." Judicial bias, if any, is not contemplated by 28 U.S.C. § 144. "Personal bias" is the necessary ingredient of this statute. And it must stem from an extrajudicial source. *United States v. Grinnell Corp.*, 384 U.S. 563, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966); *Tenants & Own. In Op. to R. v. United States Dept. of H.U.D.*, 338 F.Supp. 29 (N.D.Cal.1972); *United States v. Thomas, supra,*

Tenth, timeliness, as prescribed by the statute, as well as promptness in asserting disqualification in the proper manner is an important essential and requirement to prevent a party from awaiting the outcome of his case before taking action and to prevent last minute use to disrupt the orderly administration of justice. *Skirvin v. Mesta*, 141 F.2d 668 (Tenth Cir. 1944); *Davis v. Cities Service Oil Company*, 420 F.2d 1278 (Tenth Cir. 1970); *Peckham v. Ronrico Corporation*, 288 F.2d 841 (First Cir. 1961),

Eleventh, if in fact a judge is disqualified, a timely affidavit of bias should be filed and if not, it is waived. *Lucas v. United States*, 325 F.2d 867 (Ninth Cir. 1963); *Galella v. Onassis*, 353 F.Supp. 196 (S.D.N.Y.1972).

## REQUIREMENT OF PERSONAL BIAS

Defendant Hall's assertions for disqualification are void of any foundation of "per-

sonal bias" toward him on the part of the Court. In *Tenants & Own. In Op. to R. v. United States Dept. of H.U.D., supra,* it is said:

> " 'A distinction must be drawn between a judicial determination derived from evidence and lengthy proceedings had before the court, and a determination not so founded upon facts brought fourth in court, but based on attitudes and conceptions that have their origins in sources beyond the four corners of the courtroom. The latter type determination is the "personal prejudice" that the statute guards against; the former type determination is not. And this is justifiably so since the efforts of one judge in hearing a case would be for naught if, once having reached some conclusion as the result of his being exposed to the particular facts of a case, he would then be precluded from exercising this familiarity in disposing of the case in its entirety. Another judge, if we were to reduce ourselves to this ridiculous absurdity, would then, of necessity, be forced to rehear the entire case.' "

> \*　　\*　　\*　　\*　　\*　　\*

> " . . . 'Personal' is in contrast with judicial; it characterizes an attitude of extra-judicial origin, derived *non coram judice.* 'Personal' characterizes clearly the prejudgment guarded against. It is the significant word of the statute."

In *United States v. Grinnell Corp., supra,* the United States Supreme Court said:

> "The alleged bias and prejudice to be disqualifying must stem from an extra-judicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case."

▮　None of the three assertions is personal. None have an extra-judicial origin. All are judicial in character. The personal relations between Defendant Hall and the Court, limited solely to participation by the Court as a former Commander of the 45th Infantry Division of the Oklahoma National Guard in Defendant Hall's four Governor Day Reviews of the Oklahoma National Guard, have been most cordial and pleasant. This cordial relationship is the reason the Court had no desire to try this case and made an effort to get another Judge. Being unsuccessful in this the Court, as the assigned Judge of the case, was left no choice and counsel for Defendant Hall was so notified well in advance of the start of the jury trial. Moreover, such counsel during these discussions stated that the Court was not disqualified to try this case. Hence, the Motion to Disqualify should be denied for lack of assertions constituting "personal bias" of the Court toward this Defendant as required by the Statutes.

## THE REQUIREMENT OF SUFFICIENCY

▮　Not only are Defendant Hall's Motion and Affidavit lacking in required assertions of "personal bias" toward him but they are otherwise not sufficient under the Statutes. The allegations are insufficient to establish any reasonable basis to question the impartiality of the judge. A defendant is not required to face a judge where there is a reasonable question of impartiality but he is not entitled to a judge of his choice. A judge is presumed to be impartial. A substantial burden rests on a party moving for disqualification to sufficiently demonstrate that the judge is not impartial. *Molinaro v. Watkins-Johnson CEI Division, supra; United States v. Thomas, supra; In Re Union Leader Corporation, supra.* The judge in the case must pass upon the sufficiency of the affidavit. *Berger v. United States, supra.* And in so doing the judge has a duty not to permit the use of an affidavit of bias or prejudice as a means to accomplish delay or to disrupt or defeat the orderly administration of justice. *United States v. Orbiz, supra.* As there is no automatic disqualification upon the filing of an affidavit the judge involved, "must determine the factual and legal sufficiency of the motion and ascertain whether the alleged acts presented therein give, 'fair support' to the charge of bias and prejudice." *Deal v. Warner, supra.* Though the Court

must take the contents of the affidavit as true and this rule is being followed by the Court herein it is not inappropriate to state for the record that the Court did not agree to disqualify himself nor agree to anything else with counsel for Defendant Hall. The most the Court did was to attempt to find another judge available and willing to try the case because of his personal though casual acquaintanceship with Defendant Hall. Had Defendant Hall believed the trial judge to have been disqualified to try his case, whether he agreed to disqualify himself or not, Defendant Hall had the obligation to properly proceed under the Statutes—not wait until after the trial resulting in his four convictions and then belatedly move for disqualification prior to the imposition of sentence.

As to the charge of hostility toward counsel for Defendant Hall on March 14, 1975, such, even if true, has been held to be insufficient to establish disqualifying personal prejudice. In *United States v. Orbiz, supra,* it is said:

" . . . Our review also shows that any conclusion arrived at by this judge, such as that defendant does not want to come up for trial, even if erroneous, does not establish the alleged prejudice or bias. It is the duty of a judge to arrive at conclusions from manifestations, writings and all other evidence presented in the course of judicial proceedings before him. Critical statements and comments of a judge directed against a moving party, or his counsel or witnesses in the course of proceedings, have been held insufficient to establish disqualifying personal bias or prejudice on the judge's part, whether discreet or indiscreet. *United States v. Valenti,* D.C. [N.J.], 120 F.Supp. 80."

In *Johns Hopkins University v. Hutton, supra,* it is said:

" . . . Even the most sensitive of lawyers would hardly contend that any expression of displeasure by a trial judge concerning that attorney's relations with the Court would permit that attorney, in the midst of a case, to require the judge to disqualify himself under 28 U.S.C. § 144 or otherwise."

In *Mirra v. United States,* 379 F.2d 782 (Second Cir. 1967) cert. den. 389 U.S. 1022, 88 S.Ct. 593, 19 L.Ed.2d 667 the Court stated:

"Any opinions formed for or against a party by reason of the evidence and observed conduct before a judge in a judicial proceeding, and the judge's expressions of such opinions, however vigorous, are not the personal 'bias and prejudice' required to disqualify a judge under the statute. *Foster v. Medina,* 170 F.2d 632 (2d Cir. 1948), cert. denied 335 U.S. 909, 69 S.Ct. 412, 93 L.Ed. 442 (1949)."

As to judging the truth of Dr. Sanbar's testimony, the Court has already done this in its ruling on the Defendant's motions for mistrial. This judging of the testimony of Dr. Sanbar occurred on March 14, 1975, at an earlier stage of the case and long before the Motion and Affidavit under consideration were filed and such judging need not be done again. An adverse ruling to a party at some earlier stage of the case is not sufficient to establish "personal bias". *Berger v. United States, supra.* Moreover, the record fails to show any contradiction between Dr. Sanbar and the Court. The Court's ruling on Defendant's motions for mistrial was made entirely on the evidentiary record before it. Also this assertion is wholly conclusory. Mere conclusions are not statements of fact and are insufficient to support an allegation of personal prejudice or bias. *Willenbring v. United States,* 306 F.2d 944 (Ninth Cir. 1962).

In *Scott v. Beams, supra,* our Circuit said:

"It requires no elucidation to make plain that the affidavit fell far short of stating facts showing bias and prejudice of the court and therefore it failed to comply with the requirement of the statute."

Hence, the said Motion and Affidavit for disqualification are not sufficient under the Statute as to each of the three assertions advanced by Defendant Hall and should also be denied for this reason.

## THE REQUIREMENT OF TIMELINESS

The Motion and Affidavit of Defendant Hall to disqualify are also not timely filed. As terms of Court in the District Courts have been abolished and formal terms of Court are no longer held, 28 U.S.C. § 138, a precise adherence to the ten-day period mentioned in 28 U.S.C. § 144 is not possible. However, such time period is not without significance and the Statute otherwise calls for the *timely* filing of the required affidavit. As to the alleged agreement to disqualify, the affidavit of Defendant Hall is silent as to when he knew the undersigned would preside over his jury trial. Obviously he knew this when the jury trial commenced. Defendant Hall, however, knows he had this knowledge a considerable period of time before the commencement of his jury trial and he neglected to state this fact in his Affidavit, the truth of which he cannot controvert. Yet he made no effort to proceed under 28 U.S.C. § 144 until thirty days following the return of the four guilty verdicts at the hands of the jury. Had he felt from anything known prior to the commencement of the jury trial that the judge who was to preside at his trial was possessed of "personal bias" toward him, he had an obligation in the orderly administration of justice to proceed under the Statutes prior to trial or else he will be deemed to have waived it. In *Davis v. Cities Service Oil Company, supra,* the Court said:

" . . . Promptness in asserting disqualification is required to prevent a party from awaiting the outcome before taking action."

In *Skirvin v. Mesta, supra,* the Court stated:

"An affidavit filed long after the time fixed by the statute, and after the party making the affidavit has participated in proceedings and has invoked or sought to invoke the affirmative action of the court in his behalf, without any cause being shown for delay, does not comply with the exaction of the statute in respect to time."

On the basis of knowledge possessed before the trial, the orderly administration of justice would require a party to file a pretrial motion to disqualify—not file one thirty days after convictions and prior to sentencing.

As to the occurrences complained about during trial and on March 14, 1975 (the other two assertions) Defendant Hall again has not moved in a timely fashion as required by the Statutes. Not only should it appear that his burden to seek prompt disqualification is greater as to occurrences during the trial than before the trial, it would appear reasonable that he should move promptly so that any disqualification problems could be solved on the spot. Waiting until after the verdicts of conviction and thirty days more does not satisfy the requirement of timeliness prescribed in the Statutes and necessary to the orderly administration of justice. *Lucas v. United States, supra.*

## APPEAL

Defendant Hall has his remedy of appeal and everything the Court has done in presiding over his trial is subject to appellate review. The Appellate Court will examine the case of Defendant Hall in the light of the evidence as to his guilt or innocence and the proceedings conducted in determination thereof and for itself determine whether he had a fair and impartial trial.

For lack of allegations showing a "personal bias" of the Court toward him, for lack of sufficiency in the Motion and Affidavit and for lack of timeliness in filing the request for disqualification, all as explained as above, the Court finds and concludes that Defendant Hall's Motion and Affidavit that the trial judge should now disqualify herein should be overruled.

It is so ordered this 24th day of April, 1975.

## ON MOTIONS TO INTERVIEW JURORS, FOR ACQUITTAL AND NEW TRIAL

The Court has under consideration Motions of Defendants Hall and Taylor To Interview the Jurors and Motions For Judg-

ment Of Acquittal Notwithstanding The Verdict and Motion For New Trial. Supporting Briefs accompany the Motions. The Plaintiff has responded to said Motions. With leave of Court said Defendants have each filed a Reply to Plaintiff's Response.

## MOTION TO INTERVIEW JURORS

These Motions and Supporting Briefs are identical. The Jury by unanimous verdicts convicted the Defendant Hall of Counts I (Extortion), II (Conspiracy), III and IV (Travel Act) and Defendant Taylor of Counts II (Conspiracy), V and VI (Travel Act) of the Indictment. Each Defendant was convicted of all counts of which he was charged. Local Rule 29(B)5 provides:

" . . . lawyers appearing in this Court shall:

5. Refrain from approaching jurors who have completed a case unless authorized by the Court."

Said Defendants by their Motions desire to, "interview the members of the jury to determine whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror", or, "whether or not all jurors were able to physically or mentally function in a normal way and under no physical or mental impairment," by any of which they may have been deprived of a fair and impartial trial by jury.

Said Defendants do not allege what "extraneous prejudicial information" or what "outside influence" was improperly brought to bear on any juror. As to "whether or not all of the jurors were able to physically and mentally function in a normal way" the Defendants in their Briefs mention only juror Dell Meyer and say that her illness "could have impaired the jury in its deliberations." In their Reply Briefs said Defendants attach newspaper articles, transcripts of television appearances and other information which is outside the record.

In *United States v. Crosby*, 294 F.2d 928 at 950 (Second Cir. 1961), cert. den., 368 U.S. 984, 82 S.Ct. 599, 7 L.Ed.2d 523 (1962) the Court said:

"There are many cogent reasons militating against post-verdict inquiry into jurors' motives for decision. The jurors themselves ought not be subjected to harassment; the courts ought not be burdened with large numbers of applications mostly without real merit; the chances and temptations for tampering ought not be increased; verdicts ought not be made so uncertain."

In *United States v. Miller*,[1] 284 F.Supp. 220 (D.Conn.1968) the Court held:

"To maintain the integrity of our jury system for reaching final decisions requires that its internal process shall be inviolable, even in court proceedings. Any inquiry outside that area which may be permitted of them ought be adequately restricted to safeguard that integrity.

\* \* \* \* \* \*

" . . . Leaving jurors at the mercy of investigators for both sides to probe into their conduct would make the already difficult task of obtaining competent citizens willing to serve as jurors well nigh impossible. In this case, the whole purpose of the jury investigation conducted by the defendants was to rake up the past in an effort to find some basis for reading into it some features which the defense would like to stress on another motion for a new trial."

The Court has an obligation to the members of the jury in this case to safeguard them from harassment and annoyance and to afford them deserved protection after they have faithfully and conscientiously discharged their duties in an unpleasant and disheartening trial of more than usual duration. As said Defendants cite no "extraneous prejudicial information" or "outside influence" having been improperly brought to the jury's attention, the Court declines, in its discretion, to grant

1. The Court of Appeals held that the Trial Court properly enjoined the Defendant, defense counsel and an investigator from making an

inquiry of jurors. See *Miller v. United States,* 403 F.2d 77 (Second Cir. 1968).

the desired interviews of the trial jurors on these assertions—interviews which are obviously sought for the purpose of browsing among the thoughts of the members of the jury—interviews which would amount to a pure fishing expedition inspired by adverse verdicts of conviction. The Defendants cite no authority that permits such an excursion unsupported at the outset by any allegation of impropriety. The record will reveal that the Court meticulously and repeatedly instructed the jury against any such impropriety and further implicitly and repeatedly charged the jury to report any such violation to the Court at their earliest opportunity. No report was made. The fishing expedition desired by the Defendants has been condemned as being useless and harmful to the jury system. *United States v. Hohn,* 198 F.2d 934 (Third Cir. 1952); [2] *Dickinson v. United States,* 421 F.2d 630 (Fifth Cir. 1970); [3] *United States v. Blackburn,* 446 F.2d 1089 (Fifth Cir. 1971).[4] The cases cited by the Defendants are not in any way relevant to this case on the facts or in the light of their Motions.[5]

As to the physical and mental condition of juror Meyer, the Court, at the request of the Defendants, has already inquired into this in an evidentiary proceeding. On the afternoon of March 14, 1975 while jury deliberations were underway, the Court, at the request of the Defendants, conducted an evidentiary hearing in chambers and removed from press and public, all at the request of the Defendants, in which sworn testimony was heard from the two doctors who had ministered to this juror during her brief illness that morning, an illness finally diagnosed to be caused by arthritis and nervous tension.

Prior to hearing the testimony of the doctors, it was necessary to obtain the waiver of this juror of the doctor-patient privileged relationship. This was accomplished in a procedure approved by the Defendants. In obtaining her execution of such waivers (prepared by the Defendants) the juror was brought to chambers by a bailiff, the desire to question her doctors about her illness and the need for the waivers were explained to her by the Court, she stated that she understood the matter and she executed the waivers. This afforded the Court an opportunity to observe the juror as well as converse with her. She appeared alert and responsive and nothing unusual was observed by the Court about her mental or physical condition.[6] She did not complain about her condition.

**2.** This Court said:

" . . . But we wish to make plain that we join the court below in disapproving in general the practice of interviewing a juror after a trial as to his state of mind during the trial. There may conceivably be special circumstances which could justify such a course but we do not find them here."

**3.** This Court said:

" . . . The jury should not be exposed to post-verdict fishing expeditions into their mental processes with the hope that something will turn up."

**4.** This Court said:

" . . . Defendant's argument that the trial court abused its discretion by refusing to inquire into the deliberations of the jury is without merit. The record is barren of any showing of juror misconduct. In any event, the jury's verdict of guilty cannot be impeached by the fact that a juror may have been influenced by the improper remark of a fellow juror. *Klimes v. United States,* 1959, 105 U.S.App.D.C. 23, 263 F.2d 273. 'The jury should not be exposed to post-verdict fishing expeditions into their mental processes with the hope that something will turn up.' "

**5.** The cases cited by Defendants hold that an accused is entitled to an impartial and unbiased jury who shall base their verdict on the facts and the instructions of the Court; that conclusions reached will be induced only by evidence and arguments and not any outside influence; that books or newspaper articles should not be brought into the jury room; that third parties should not make statements to the jury; that a jury should not be subjected to serious inconvenience and stress by the Court; that a bailiff should not tell the jury that the defendant is guilty or that this was the third fellow the defendant had killed or read a newspaper article about the case to the jury and that an attempt to bribe a juror is prohibited. These cases recite well recognized principles but factually they are inapplicable to the situation at hand.

**6.** In *United States v. Dioguardi,* 492 F.2d 79 (Second Cir. 1974) the Circuit Court relied on the trial Judge's observation that the juror involved (said to have infirmities which might

It should be noted that prior to this evidentiary hearing, the Court had directed the jury to convene at 1:30 p. m. on March 14, 1975 for a continuation of its deliberations. This was done with the approval of this juror's personal physician who had just examined her that morning and who related to the Court that the juror had told him she felt she could continue with her jury work at 1:30 p. m. that day. Thereupon, this doctor discharged her from the hospital at 11:00 a. m. This decision made about 11:00 a. m. that the jury resume deliberations at 1:30 p. m. was thus made by the Court on the advice of this juror's personal doctor and her own statement of readiness to resume jury deliberations at 1:30 p. m.

The evidentiary hearing thereafter conducted at Defendants' request explored the matter of this juror being able to render satisfactory jury service by receiving the sworn expert medical testimony of the doctors who attended her that morning, following which hearing the Court made the decision on the evidence before the Court that the juror could render satisfactory jury service and declined to declare a mistrial as requested by the Defendants.[7]

Thus, the Court first directed the jury to resume its deliberations at 1:30 p. m. on medical advice and advice from the juror herself that she was ready to resume her jury work and then, at the request of Defendants, conducted an evidentiary hearing in which the two doctors involved gave sworn testimony about her condition from which the Court made the further determination and decision that this juror was capable of performing satisfactory jury service at that time and that a mistrial should not be declared as requested by Defendants.

■ As the Court has already conducted an evidentiary hearing on the ability of juror Meyer to render satisfactory jury service on March 14, 1975 (she being the only juror mentioned by Defendants as possibly having a physical or mental condition which could have impaired the jury) and at the conclusion thereof made an informed judicial decision that she was capable of rendering satisfactory judicial service, the Court, in its discretion, declines to retry the matter. In this connection, it is recognized that juror Meyer may not impeach her verdicts. *McDonald v. Pless,* 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300 (1915). Hence, an interview of this juror bringing forth a desire on her part to impeach her verdicts may not be considered by the Court.

Therefore, as said Defendants cite no extraneous prejudicial information or no outside influence to which the jury was allegedly exposed and as the Court has already conducted an evidentiary hearing and made a judicial decision that juror Meyer was able to render satisfactory jury service at the time and as this juror may not attempt to impeach her verdicts, the Court should deny Defendants' Motions to Interview The Jurors.

## MOTIONS FOR JUDGMENT OF ACQUITTAL NOTWITHSTANDING THE VERDICT

Such a motion is governed by Rule 29, Federal Rules of Criminal Procedure. This rule generally provides that after a jury returns a verdict of guilty, the Court may set aside the verdict and enter a judgment of acquittal, "if the evidence is insufficient to sustain a conviction of such offense or offenses." These Motions are not in compliance with Local Rule 13(e) as they do not set out with particularity the grounds therefor and are not accompanied by a concise brief[8] citing all authorities upon which

---

have rendered her unable to comprehend the proceedings at trial) was "alert and responsive and he noted nothing unusual about her". The Court held in these circumstances that it was unnecessary to hold an inquiry into the juror's competence.

7. The Defendants refused to drop this juror as permitted by Rule 23(b), Federal Rules of Criminal Procedure. Thus, they would not proceed

with and they would not proceed without this juror. Their desire was a mistrial.

8. Local Rule 13(e) provides in pertinent part: ". . . Motions in criminal cases . . . shall be in writing and state with particularity the grounds therefor and the relief or order sought. . . . All motions must be accompanied by a concise brief citing all authorities upon which the movant relies."

the Movant relies. Defendant Taylor desires to rely on his Motion for Judgment of Acquittal made at the close of all the evidence at the trial. This, of course, is not in compliance with the language and intent of Local Rule 13(e). Rule 29, Federal Rules of Criminal Procedure and Local Rule 13(e) are intended to allow a defendant to present a motion for judgment of acquittal notwithstanding the verdict to the Court in depth and detail after the stress of the trial is over and upon research and careful reflection of what transpired at the trial.

The Court could decline to entertain these Motions in the foregoing circumstances. However, as neither Defendant, in the opinion of the Court, was entitled to a judgment of acquittal as to any count in which he was charged at the close of all the evidence, the Court will again rule that the evidence was sufficient to sustain a conviction of Defendants Hall and Taylor of each count of which they stood charged.

■ In considering a motion for judgment of acquittal the trial court must consider the evidence in the light most favorable to the prosecution in determining whether there is substantial evidence from which a jury can find a defendant guilty as charged beyond a reasonable doubt. *United States v. Mallory,* 460 F.2d 243 (Tenth Cir. 1972), cert. den., 409 U.S. 870, 93 S.Ct. 197, 34 L.Ed.2d 120; *United States v. Harris,* 441 F.2d 1333 (Tenth Cir. 1971); *Speers v. United States,* 387 F.2d 698 (Tenth Cir. 1967), cert. den., 391 U.S. 956, 88 S.Ct. 1864, 20 L.Ed.2d 871.

The evidence of the Government established that Defendant Taylor developed a plan to sell $10,000,000.00 in promissory notes of a newly created corporation to be secured by Government guaranteed collateral to the Oklahoma Public Employees Retirement System (System). Defendants Hall, Taylor and Mooney met in the Governor's Mansion and discussed this plan. Defendant Hall arranged for the plan to be presented to the Director of the System. Thereafter on December 2, 1974 Defendant Hall through Mooney (who had brought Taylor and Hall together) demanded $100,-000.00 for getting the Taylor plan approved by the System, which sum he and Mooney would divide. Taylor agreed to this payment. Hall then contacted John Rogers, Oklahoma Secretary of State, and Chairman of the Board of Trustees of the System and told him there was $50,000.00 in it for them if the Taylor plan was approved by the Board of the System. Hall said that the $50,000.00 was to be divided between Rogers and Hall. Hall then told Mooney that he would have to pay one half of the $25,000.00 to be paid to Rogers. Thereafter Hall had numerous contacts with Rogers and several members of the Board of Trustees of the System all aimed at getting the Taylor plan approved by the Board of the System. Hall was not a member of the Board but several of its members were his appointees and he was then Governor of the State of Oklahoma. Hall importuned these members of the Board to approve the Taylor plan. The Board on December 23, 1974 did approve the Taylor plan subject to a letter of legality from the Attorney General and a letter of approval from the Investment Counsellor of the Board. Thus, the Government's evidence was that Hall attempted to induce Taylor to pay the said $100,000.00, with Taylor's consent, under color of official right by virtue of Hall's official position as Governor of Oklahoma to bring about the approval of the Taylor plan by the System; that Hall, Taylor and Mooney conspired and committed overt acts in furtherance of said conspiracy to violate the Federal Travel Act by traveling and using facilities of interstate commerce to promote or carry on or facilitate the promotion or carrying on of the unlawful activity to bribe John Rogers, a public officer of the State of Oklahoma, by paying him $25,-000.00 (later increased to $31,250.00 due to a more favorable rate of interest to Taylor) to obtain approval of the Taylor plan by the Board of the System of which he was Chairman; that both Hall and Taylor traveled and used facilities in interstate commerce with specific intent to further the unlawful

activity of bribery of Rogers, a public officer of the State of Oklahoma, and following such interstate travel and use of interstate facilities they performed or attempted to perform an act to promote or carry on the unlawful activity of bribery of said Rogers to influence him in his official duties as Chairman of the Board of the System and that as to all counts Hall and Taylor acted knowingly and willfully and where required the involvement of commerce was shown by the evidence to be present. The evidence of the Government was sufficient to prove each of the essential elements of each of the counts as to the Defendant or Defendants named therein on trial before this Court and Jury.

█ Suffice it to say that the evidence of the Government was sufficient to sustain a conviction of each offense charged beyond a reasonable doubt as to both Defendants Hall and Taylor. Both Motions For Judgment Of Acquittal Notwithstanding the Verdict should therefore be overruled.

## MOTION FOR NEW TRIAL

Defendant Hall moves for a new trial on seventeen grounds. But only ground XVI is briefed. Defendant Hall has therefore again failed to comply with Local Rule 13(e), *supra*. In these circumstances the Court will merely observe that the unbriefed grounds are essentially bald conclusions and are deemed to be wholly lacking in merit. The Court is of the opinion that the verdicts are sustained by sufficient evidence, are not contrary to the law and are not contrary to the Court's instructions. The Court is aware of no errors of law occurring during the trial. The Court's rulings regarding the sequestering of the jury are believed to have been proper in the exercise of the Court's discretion. No grounds for mistrial occurred during the trial and the Court's rulings on the evidence are believed to have been correct—if not, Defendant Hall now points to no prejudice therefrom. The Defendants had a fair trial and no irregularities during the trial are known to the Court. The Court's instructions are believed to have correctly embodied the applicable law of this case when viewed in the light of the Indictment, the applicable criminal statutes and the evidence. The Court properly exercised its discretion and authority in impaneling the jury under Rule 24, Federal Rules of Criminal Procedure,.and afforded the Defendants the opportunity to suggest additional questions or further inquiry, to be submitted to the jurors by the Court, if they desired. In addition, proposed questions for the jurors were presented by defense counsel to the Court which were substantially utilized by the Court in its examination of the jurors. The Court did not err in overruling this Defendant's Motion For Judgment Of Acquittal for the reasons heretofore set out. Finally, the Court is completely satisfied that Defendant Hall and as well his Co-defendant on trial each received a fair and impartial trial and none of their Constitutional rights were violated to the knowledge of the Court. The interests of justice do not require that a new trial be granted. As Defendant Hall's grounds for a new trial above treated with by the Court are conclusory and lack particularity and are not supported by a concise brief, the Court can only respond thereto in the same vein. It is felt that if Defendant Hall knows of any error of any magnitude to complain about he would certainly follow the rules of the Court and specify the same factually and submit supporting briefs thereon as required by the rules of the Court so that the trial court could fully consider and appropriately respond thereto.

Defendant Hall's ground XVI for a new trial (and the only ground covered by his brief) has to do with juror Meyer. The Court has previously alluded to the brief illness of this juror due to arthritis and nervous tension and the same is incorporated herein to avoid some repetition. This ground will hereinafter be further discussed.

Defendant Taylor moves for a new trial on only two grounds: (1) Error in the Court giving the instruction entitled "Agency", and (2) Juror Meyer allegedly being unable

to render satisfactory jury service on or about March 14, 1975.

## THE AGENCY INSTRUCTION

■ This instruction reads:

### "AGENCY

"It is not necessary to prove that an accused personally did every act constituting the offense charged.

As a general rule, whatever any person is legally capable of doing himself, he can do through another as his agent. So, if the acts or conduct of an employee or other agent are wilfully ordered or directed, or wilfully authorized or consented to by an accused, then the law holds the accused responsible for such acts or conduct the same as if personally done by the accused."

There is an abundance of evidence that Defendant Taylor ordered and directed Defendant Mooney (who plead guilty to Count II, the Conspiracy Count) to do many acts on his behalf with reference to the crimes charged against Defendant Taylor in Counts II, V and VI. Not only did Defendant Mooney so testify but Defendant Taylor admitted giving Mooney several orders and directions in connection with the activities involved in said Counts. As Defendant Taylor does not appear to contend otherwise on this point in his Brief and Reply Brief, the Court will not undertake to cite the testimony which reveals that Mooney acted on orders and directions from Taylor in connection with activities committed in relation to Counts II, V and VI. But, an example is the admission of Defendant Taylor that he ordered and directed Mooney to go to Oklahoma City from Texas on or about January 14, 1975 to obtain from Rogers the letter of commitment for the loan from the System which Rogers had earlier agreed by telephone with Defendant Taylor to give to Taylor.

■ Thus, the evidence in this case supports the giving of this instruction. Therefore, is the instruction a correct statement of the law? It comes from *Devitt & Blackmar, Federal Jury Practice & Instructions,* § 11.12, a recognized and universally used

authority on jury instructions in the Federal Courts. The last paragraph contained in *Devitt* was not included in the "Agency" instruction because the precise paragraph (defining willfully) had been previously given in the Court's instructions. It is not good procedure to repeat instructions and the Courts are cautioned against such conduct. *White Auto Stores v. Reyes,* 223 F.2d 298 (Tenth Cir. 1955); *Lacaze v. United States,* 391 F.2d 516 (Fifth Cir. 1968). As willfully applied to all six of the Counts in the Indictment and to all Defendants, it was given as a separate instruction shortly preceding the "Agency" instruction. Our Circuit has approved the content of this "Agency" instruction. *United States v. Pauldino,* 487 F.2d 127 (Tenth Cir. 1973).

■ Apparently, Defendant Taylor would have the Court grant a new trial based on a post-verdict newspaper account of what one juror allegedly commented about this instruction and that somehow the instruction should therefore be found to be erroneous. First, Defendant Taylor cites no case to the effect that the content of this instruction is erroneous. Moreover, juror post-mortems on what an instruction means will not support the granting of a new trial. In *Young v. United States,* 163 F.2d 187 (Tenth Cir. 1947) our Court of Appeals held that a juror cannot testify that while the substance of a verdict returned to Court was understood, it was predicated upon misrepresentation of the law. 8 *Wigmore, Evidence,* § 2349, (McNaughton rev. 1961), states:

"Accordingly, it is today universally agreed that on a motion to set aside a verdict and grant a new trial the verdict cannot be affected, either favorably or unfavorably, by the circumstances:

that one or more jurors *misunderstood* the judge's *instruction*;"

Thus, it is believed that the "Agency" instruction correctly states the law, the evidence clearly supported the giving of this instruction in this case, in a separate instruction the Court defined "willfully" as that term was used in the "Agency" in-

struction and a juror's post-verdict comment or observation about the instruction will not support the granting of a new trial. In these circumstances the verdicts should not be set aside and a new trial granted on this ground.

## JUROR MEYER

When the entire jury panel for this term of Court was qualified by the Court, the jurors were asked by the Court if any was incapable by reason of mental or physical infirmity to render satisfactory jury service. They were further told that this condition would be a disqualification from jury service and that each juror had the duty to advise the Court if he possessed this disqualifying condition. *Juror Meyer made no response.* When the jury was empaneled to try this case and before they were sworn the Court asked the jurors if any had a problem which would prevent him from sitting in this case for an estimated two or three weeks. *Juror Meyer made no response.* After the Court's instructions were read to the jury and before the two alternative jurors were discharged and when the jury was advised that it would be sequestered during its deliberations, the Court asked the regular jurors if any had a health problem or any other problem which would indicate that he should now drop out and allow an alternate juror to replace him. *Juror Meyer made no response.* Wednesday passed without incident. Late Thursday afternoon the Foreman of the Jury advised the Court that the Jury wished to recess until Friday morning; that one of the jurors was not feeling well. This juror turned out to be juror Meyer. Arrangements were made for this juror to consult that evening with her personal physician. It appears that he told her to take two valium tablets (5 milligrams each) at 6:00 p. m. and if she were still nervous about 9:00 p. m. to take another valium tablet (5 milligram) along with a sleeping pill. He also prescribed a laxative, as she was constipated. The next morning, upon arriving in

chambers, the Court was handed a letter by a bailiff, which letter was signed by Doctor Kenneth N. Richtner, a resident physician at St. Anthony's Hospital in Oklahoma City. Juror Meyer had been taken, in the custody of bailiffs, to this hospital around 5:30 a. m. on March 14, 1975. At about 6:00 a. m. Dr. Richtner gave her 50 milligrams of demerol. Certain tests were made and he reported in his letter to the Court that this juror possibly had a myocardial infarction or a heart attack. At about 9:00 a. m. the Court presented this letter to the attorneys in the case. Discussions were had back and forth in an informal way about proceeding with the remaining eleven jurors as permitted by Rule 23(b), Federal Rules of Criminal Procedure. The Plaintiff was agreeable and perhaps Defendant Taylor was agreeable but Defendant Hall was not agreeable to so proceed under this Rule. Later around 10:30 a. m. the Court was called by juror Meyer's personal physician who had just examined her in the hospital. He stated to the Court that the juror had not had a heart attack. Her problem was arthritis and nervous tension. After talking to the juror, the doctor advised the Court that she said she felt like resuming her jury work and that she could resume deliberations at 1:30 p. m. that day. Accordingly, her personal physician discharged her from the hospital at 11:00 a. m. He had previously prescribed a 5 milligram valium tablet for the juror to be taken at 12:00 noon. She had lunch with the other jurors at the hotel and all resumed deliberations at 1:30 p. m.

Both doctors testified at the hearing before the Court that the demerol given the juror at around 6:00 a. m. would wear off in 4 to 6 hours. This medicine, they advised, is to relieve pain. The doctor who administered the demerol testified:

"THE COURT: Did you administer any medications to her this morning that would impair her mental faculties or thinking process as of 1:30 today?

THE WITNESS: I believe not.

THE COURT: Did you observe or find or see anything that, in your opinion, would impair her mental process as of 1:30 today?

THE WITNESS: I believe not."

Her personal physician testified that valium relaxes nervousness and relaxes muscle tension and that the valium would definitely help this juror's nervousness and tension. Also this doctor testified that, "She stated to me that the valium was helping her to relax and be more collected." This doctor also testified that valium is prescribed for ordinary business people to take during their work in a business day and that he had prescribed valium for this juror in the past. This doctor testified that when he saw her about 11:00 a. m., "she was rather relieved, she seemed clear of mind then . . . .". He also testified that he, "accepted the consent form" juror Meyer had signed, "with the assumption that she was clear of mind."

After observing the juror and receiving the sworn testimony of the two doctors involved (all at the Defendants' request) the Defendants then renewed or continued to assert their motions for a mistrial on the basis that juror Meyer was not capable of performing satisfactory jury service. Earlier discussions about proceeding with eleven jurors were concluded on the basis that both Defendants were not agreeable to so proceeding though expressly permitted by the Federal Rules.

In these circumstances, the Court was confronted by the events at hand and the Defendants' motions for a mistrial with the necessity to make a judicial determination as to the ability of juror Meyer to render satisfactory jury service at and after 1:30 p. m. on March 14, 1975. From observing the juror and on the highly reliable medical record before the Court and having been informed that the juror herself stated she was ready to resume jury deliberations, the decision was not in any way difficult for

the Court. The Court determined on the record before it that the juror was capable of rendering satisfactory jury service and the defense motions for a mistrial on the basis that she was not so capable were overruled.

The jury returned verdicts finding Defendant Hall guilty of the four counts of which he was charged and Defendant Taylor of the three counts of which he was charged. The Court inquired of the jurors if their seven verdicts of guilty, as read in open court, were the verdicts of each and every member of the jury and advised the jury that if they were not the verdicts of each and every member of the jury that it was the duty of a juror to then so advise the Court. No juror advised the Court that the seven verdicts of guilty as read in open court were not their individual verdicts. The Court then had the attorneys examine the seven verdicts as well as the unused verdict forms and inquired of them if there was anything further before the Court discharged the jurors from further participation as jurors in this case. The Court also inquired of the attorneys if they wanted the jury individually polled by the Court. The suggestion of individual polling was declined by all attorneys and the attorneys requested nothing further and agreed to the discharge of the jurors forthwith.

By their Motions and by the newspaper articles, transcripts of television appearances and certain documents attached to their Reply Briefs, all of which attachments are outside the record of the Court, the Defendants desire that juror Meyer be permitted to impeach her seven verdicts of guilty. As heretofore mentioned the United States Supreme Court in *McDonald v. Pless, supra,* stated that a juror is not permitted after returning a solemn verdict in open court to thereafter impeach the same. Sixty years ago the United States Supreme Court said in *McDonald v. Pless, supra:*

" . . . But let it once be established that [if] verdicts solemnly made and publicly returned into court can be

attacked and set aside on the testimony of those who took part in their publication and [then] all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something which might invalidate the finding. Jurors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict. If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation; to the destruction of all frankness and freedom of discussion and conference."

\* \* \* \* \* \*

" . . . And, of course, the argument in favor of receiving such evidence is not only very strong, but unanswerable— when looked at solely from the standpoint of the private party who has been wronged by such misconduct. The argument, however, has not been sufficiently convincing to induce legislatures generally to repeal or to modify the rule. For, while it may often exclude the only possible evidence of misconduct, a change in the rule 'would open the door to the most pernicious acts and tampering with jurors.' 'The practice would be replete with dangerous consequences.' 'It would lead to the grossest fraud and abuse' and 'no verdict would be safe.' "

Even earlier in *Mattox v. United States,* 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917 (1892) the United States Supreme Court said that evidence of jurors as to the motives or influences which affected their deliberations is inadmissible to impeach or to support their verdict. This rule of law has been universally followed through the years

in countless decisions. Our Circuit has embraced the rule in *Castleberry v. MRN Corporation,* 470 F.2d 1113 (Tenth Cir. 1972); *Johnson v. Hunter,* 144 F.2d 565 (Tenth Cir. 1944) and in *Young v. United States, supra.*[9] Were this not the law, the solemn verdict of a jury publicly returned in open court would more often than not become a worthless piece of paper. Any other rule of law would do violence to our sacred institution of jury trials. Public policy supports this rule of law. Were this not the law, there would be no finality in the verdict of a jury. The return of a jury verdict of guilty would become the signal for more litigation as a result of activities of those, such as disappointed litigants and those aligned with them or their cause, who would tamper with members of the jury in an effort to defeat the verdict of jurors sworn to decide a case on the basis of the evidence and the law presented to them in the Courtroom. Our juries are universally instructed that they have a duty to consult with one another and to deliberate with a view to reaching an agreement if it can be done without violence to individual judgment. They are told that each juror must decide that case for himself but only after an impartial consideration of the evidence with his fellow jurors. Further, that a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous. Our Circuit has approved this instruction. *United States v. Wynn,* 415 F.2d 135 (Tenth Cir. 1969). Jurors are expected to argue the case pro and con in their secret deliberations. A jury is made up of different people, no two having the same education, intelligence, background, character and moral responsibility. Their experience varies as does their sex and age and color. All have different strengths and weaknesses of body and mind. All of which

---

**9.** Other Circuits have followed this Rule: See *Cunningham v. United States,* 356 F.2d 454 (Fifth Cir. 1966); *Complete Auto Transit, Inc. v. Wayne Broyles Eng. Corp.,* 351 F.2d 478 (Fifth Cir. 1965); *United States v. Chereton,* 309 F.2d 197 (Sixth Cir. 1962); *Klimes v. United States,* 105 U.S.App.D.C. 23, 263 F.2d 273 (1959); *Stephens v. City of Dayton, Tennessee,* 474 F.2d 997 (Sixth Cir. 1973) and *Miller v. United States,* 403 F.2d 77 (Second Cir. 1968).

contribute to the proposition of a trial by a jury of one's peers.

It is stated in 8 *Wigmore, Evidence,* § 2349 (McNaughton rev. 1961):

"Accordingly, it is today universally agreed that on a motion to set aside a verdict and grant a new trial the verdict cannot be affected, either favorably or unfavorably, by the circumstances:

\*　　\*　　\*　　\*　　\*　　\*

or were influenced by an *illegal paper* or by an *improper remark* of a fellow juror;

or *assented* because of *weariness* or illness or importunities;"

The American Bar Association's Standards Relating to the Administration of Criminal Justice, Trial by Jury, § 5.7 states:

"(a) Upon an inquiry into the validity of a verdict, no evidence shall be received to show the effect of any statement, conduct, event, or condition upon the mind of a juror concerning the mental processes by which the verdict was determined."

The New Federal Rules of Evidence, soon to become effective, provide in Rule 606(b):

"A juror may not testify as to any matter or statements occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's minds or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith."

Therefore, the Court may not permit juror Meyer to now impeach her seven verdicts of guilty solemnly returned in open court and defeat what has been a fair and impartial trial for all concerned culminated by verdicts amply supported by the evidence.

▬▬ Defendants urge that Governmental counsel, because of the preparation on the morning of March 14, 1975 of a Stipulation to proceed with eleven jurors in view of the letter of Dr. Richtner, has ad-

mitted that juror Meyer has become physically incapacitated. Defendants refer to Rule 11, Federal Rules of Civil Procedure which has to do with the signing of pleadings in a case. Defendants assert this Stipulation was drawn during the evidentiary hearing at which the two doctors testified. In this they are incorrect, and no doubt on reflection they will recognize the error of this assertion. The Stipulation was prepared in connection with the informal discussions begun around 9:00 a.m. between the attorneys and the Court, when all we then knew was the contents of the letter from Dr. Richtner that juror Meyer possibly had a heart attack. Rule 23(b), Federal Rules of Criminal Procedure, requires a *written* stipulation *with the Court's approval* before a jury may consist of less than twelve members. A stipulation is an agreement between counsel with respect to business before a court and it is essential that it be assented to by the parties or their representatives. 83 C.J.S. Stipulations §§ 1 and 3, pages 2 and 3. This Stipulation was only signed by the United States Attorney. It was not assented to or signed by the Defendants or their attorneys. At the time Government Counsel prepared the same, it was not known that juror Meyer had not in fact, suffered a heart attack. An inquiry from the Court during the discussions of the morning of March 14, 1975 brought the decision from Defendant Hall, that he would not agree to a jury of less than twelve. This took place before the Court was called by Dr. Sanbar, and informed by him that juror Meyer had not had a heart attack, and that she said she felt like resuming jury deliberations at 1:30 p. m. that day. The document was not approved by the Court as required by the controlling Rule. It could not be a valid stipulation in this case until all assented to and signed the same and in this instance approved by the Court, following which it would have been filed with the Clerk of the Court. The prepared stipulation was not so assented to, it was not signed by Defendants or their representatives, nor was it approved by the Court or filed in the case. The matter of proceeding with eleven jurors was discarded

548

with the decision by Defendant Hall that he would not agree to proceed with eleven jurors and thereafter was a forgotten matter when the Court received the information from Dr. Sanbar shortly before 11:00 a. m. that juror Meyer had not had a heart attack and was ready to resume jury deliberations. The document was not mentioned in the afternoon evidentiary hearing which began after the jury had started deliberations at 1:30 p. m. The efforts of defense counsel to claim an admission of juror incapacitation by the Government in these circumstances is wholly lacking in any merit whatsoever.

In view of the foregoing and as it is well settled that motions for new trial are not favored and should be granted only with great caution,[10] the Court should deny the Motions of Defendants Hall and Taylor for a new trial.

It is so ordered this 24th day of April, 1975.

**10.** See *United States v. Costello*, 255 F.2d 876 (Second Cir. 1958), cert. den. 357 U.S. 937, 78 S.Ct. 1385, 2 L.Ed.2d 1551, reh. den. 358 U.S. 858, 79 S.Ct. 16, 3 L.Ed.2d 93; *United States v. Johnson*, 327 U.S. 106, 66 S.Ct. 464, 90 L.Ed. 562; *Weiss v. United States*, 122 F.2d 675 (Fifth Cir. 1941) cert. den. 314 U.S. 687, 62 S.Ct. 300, 86 L.Ed. 550; *United States v. Mayersohn*, 452 F.2d 521, 536 (Second Cir. 1971) and *United States v. Trudo*, 449 F.2d 649, 653 (Second Cir. 1971).